Electronically Filed
7/6/2022 3:26 PM
Steven D. Grierson
CLERK OF THE COURT

1  Matthew D. Dayton, Esq.
   Nevada Bar No. 11552
2  Kevin S. Soderstrom, Esq.
   Nevada Bar No. 10235
3  **GHIDOTTI | BERGER LLP**
   7251 W. Lake Mead Blvd., Ste. 470
4  Las Vegas, NV 89128
5  Tel: (949) 427-2010
   Fax: (949) 427-2732
6  mdayton@ghidottiberger.com
   ksoderstrom@ghidottiberger.com
7  Attorneys for Plaintiff

8              **EIGHTH JUDICIAL DISTRICT COURT**

9                 **CLARK COUNTY, NEVADA**

10

11  5AIF JUNIPER 2, LLC, a foreign limited     Case No.: A-22-855044-C
    liability company,                          Dept. No.: 27
12
                    Plaintiff,
13                                              **COMPLAINT**

14       vs.

15  JAMES WHITE, an individual; JEAN            **ARBITRATION EXEMPT**
    WHITE, an individual; DOES 1 through        **(Action Seeking Declaratory Relief)**
16  10 and ROE BUSINESS ENTITIES 1
    through 10, inclusive,
17
                    Defendants.
18

19
            COMES NOW Plaintiff 5AIF JUNIPER 2, LLC ("Plaintiff"), by and through its
20
    counsel of record, the law firm of Ghidotti Berger LLP, and hereby complains and alleges
21
    against the defendants as follows:
22
                    **PARTIES, JURISDICTION, AND VENUE**
23
         1.     Plaintiff is a foreign limited liability company.
24
         2.     Defendants JAMES WHITE and JEAN WHITE (collectively "Defendants"),
25
    upon information and belief, at all times material herein, are and were individuals residing in
26
    California and the borrowers on a home loan agreement previously secured by real property
27
    situated in Clark County, Nevada.
28

                                        1

3.     Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1 through 10 and ROE BUSINESS ENTITIES 1 through 10 and, therefore, sues those defendants under such fictitious names. Plaintiff will amend this Complaint to add the true names and capacities of such defendants when ascertained.

4.     The claims set forth in this Complaint pertain to real property situated in Clark County, Nevada.

5.     Plaintiff seeks a deficiency judgment following an foreclosure sale of real property which secured a debt owed to Plaintiff by Defendants.

6.     Plaintiff seeks judgment against Defendants for damages in an amount exceeding $15,000.00.

7.     Jurisdiction is obtained and venue is properly set before the Eighth Judicial District Court of the State of Nevada.

## GENERAL ALLEGATIONS

8.     On or about March 19, 2019, Defendants executed a promissory note (the "Note") in exchange for a loan in the approximate amount of $840,000.00 from Pinnacle Lending Group, Inc. *Ex. 1 attached hereto.*

9.     To secure repayment of the loan, Defendants executed a deed of trust (the "Deed of Trust") against the real property commonly known as 316 Lacy Lane, Las Vegas, Nevada, 89107, Assessor's Parcel Number 139-32-210-007 (the "Property"), designating Pinnacle Lending Group, Inc. as beneficiary of the Deed of Trust. *Ex. 2 attached hereto.*

10.    The Deed of Trust was recorded with the Clark County Recorder on March 27, 2019 as Instrument No. 20190327-0001601. *Id.*

11.    On March 27, 2019, an assignment was recorded with the Clark County Recorder as Instrument No. 20190327-0001602 whereby the Note and Deed of Trust were transferred from Pinnacle to 5 Arch Funding Corporation. *Ex. 3 attached hereto.*

12.    On March 27, 2019, an assignment was recorded with the Clark County Recorder as Instrument No. 20190327-0001603 whereby the Note and Deed of Trust were transferred from 5 Arch Funding Corporation to 5 Arch Income Fund 2, LLC, from 5 Arch

1 Income Fund 2, LLC to 5AIF Maple, LLC, and from 5AIF Maple, LLC to 5AIF Maple 2,

2 LLC. *Ex. 4 attached hereto.*

3      13.    On April 4, 2019, an assignment was recorded with the Clark County Recorder

4 as Instrument No. 20190404-0004010 whereby the Note and Deed of Trust were transferred

5 from 5AIF Maple 2, LLC to 5AIF Juniper 2 Dep, LLC, and from 5AIF Juniper 2 Dep, LLC to

6 5AIF Juniper 2, LLC. *Ex. 5 attached hereto.*

7      14.    On or about May 26, 2020, Defendants executed a loan modification

8 agreement whereby certain terms and conditions of the Note were modified. *Ex. 6 attached*

9 *hereto.*

10      15.    On or about July 22, 2020, Defendants executed a second loan modification

11 agreement whereby certain terms and conditions of the Note were modified. *Ex. 7 attached*

12 *hereto.*

13      16.    Defendants defaulted on their obligations under the Note.

14      17.    On July 15, 2021, a notice of default pertaining to the Deed of Trust was

15 recorded with the Clark County Recorder as Instrument No. 20210715-0002079. *Ex. 8*

16 *attached hereto.*

17      18.    On December 8, 2021, a notice of trustee's sale was recorded with the Clark

18 County Recorder as Instrument No. 20211208-0002329. *Ex. 9 attached hereto.*

19      19.    On January 27, 2022, the Property was sold at a nonjudicial foreclosure sale to

20 RG Insurance Trust.

21      20.    A Trustee's Deed Upon Sale conveying ownership of the Property to RG

22 Insurance Trust was recorded on February 9, 2022 as Instrument No. 20220209-0000726. *Ex.*

23 *10 attached hereto.*

24      21.    At the time of the foreclosure sale, the amount of the unpaid debt owed to the

25 secured lender was $877,034.20, and the Property sold for $599,100.00, leaving a deficient

26 balance of $277,934.20 at that time.

27      22.    Interest continues to accrue on the deficient balance at a contractual rate of

28 20.00% per annum.

23.    Plaintiff's damages increase daily, as interest continues to accrue.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Deficiency Judgment)

24.    Plaintiff repeats and re-alleges the allegations contained in each and every preceding paragraph as though fully set forth herein.

25.    A valid contract exists between Plaintiff and Defendants.

26.    Plaintiff has duly performed all conditions, covenants, and promises required of it under the contract.

27.    Defendants have breached the terms of the contract and have failed to perform all conditions, covenants, and promises required to be performed by Defendant in accordance with the contract.

28.    Specifically, Defendants have failed to pay all amounts owed to Plaintiff by Defendants.

29.    As a result of Defendants' breach, Plaintiff has been damaged in an amount exceeding $15,000.00.

30.    Plaintiff is entitled to a deficiency judgment against Defendants pursuant to the agreement of the parties and statute, including NRS 40.455.

31.    It has been necessary for Plaintiff to retain the services of the undersigned counsel to prosecute this action, and Plaintiff is entitled to an award of its reasonable attorney's fees and costs pursuant to the terms of the agreement between the parties.

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

32.    Plaintiff repeats and re-alleges the allegations contained in each and every preceding paragraph as though fully set forth herein.

33.    A true and justiciable controversy exists between Plaintiff and Defendants.

34.    Plaintiff's interests are adverse to those of Defendants.

35.    Plaintiff's and Defendants' rights, status, and legal relations are affected by contract and statute.

36.     This matter is filed in part under the Uniform Declaratory Judgments Act.

37.     Pursuant to NRS 30.040, Plaintiff is entitled to declaratory relief as to rights, status, and legal relations at issue in this matter.

38.     It has been necessary for Plaintiff to retain the services of the undersigned counsel to prosecute this action, and Plaintiff is entitled to an award of its reasonable attorney's fees and costs pursuant to the terms of the agreement between the parties.

WHEREFORE, Plaintiff prays for relief as follows:

1.  For declaratory relief as to rights, status, and legal relations at issue in this matter;

2.  For damages in an amount exceeding $15,000.00;

3.  For reasonable attorney's fees

4.  For costs of suit;

5.  For pre-judgment interest at the contractual rate of interest;

6.  For post-judgment interest at the contractual rate of interest; and

7.  For such other and further relief as the Court deems proper.

DATED this 5th day of July, 2022.

**GHIDOTTI | BERGER LLP**

_/s/ Kevin S. Soderstrom_
Matthew D. Dayton, Esq.
Nevada Bar No. 11552
Kevin S. Soderstrom, Esq.
Nevada Bar No. 10235
7251 W. Lake Mead Blvd., Ste. 470
Las Vegas, NV 89128
**Attorneys for Plaintiff**

**Exhibit Index**

| Exhibit | Description |
|---------|-------------|
| 1 | Note |
| 2 | Deed of Trust (20190327-0001601) |
| 3 | Assignment of Deed of Trust (20190327-0001602) |
| 4 | Assignment of Deed of Trust (20190327-0001603) |
| 5 | Assignment of Deed of Trust (20190404-0004010) |
| 6 | Loan Modification Agreement (May 26, 2020) |
| 7 | Loan Modification Agreement (July 22, 2020) |
| 8 | Notice of Default (20210715-0002079) |
| 9 | Notice of Trustee's Sale (20211208-0002329) |
| 10 | Trustee's Deed Upon Sale (20220209-0000726) |

# Exhibit 1

# NOTE

Date: March 19, 2019
Loan No.: 10804
Property Address: 316 Lacy Lane Las Vegas NV 89107

**1. BORROWER'S PROMISE TO PAY.** In return for a loan that I have received (the **Loan**), I unconditionally promise to pay U.S. $840,000.00 or so much thereof as may from time to time be owing hereunder by reason of advances made to or for the account of Borrower (this amount is called **Principal**), plus interest, to the order of the Lender. The Lender is Pinnacle Lending Group, Inc., a Nevada corporation, located at 6475 S. Rainbow Blvd., Suite 102, Las Vegas, Nevada 89118. I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the **Note Holder**. The person(s) and/or entity(ies) executing this Note below are referred to herein (collectively if more than one) as **I** or **Borrower**.

**2. INTEREST.**

(A) __Interest Rate.__ Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.250 %, in arrears, on the unpaid balances of this Note from time to time outstanding.

(B) __Default Rate.__ So long as (i) any monthly installment under this Note remains past due for ten (10) calendar days or more or (ii) any other default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier to occur of either the first unpaid monthly installment or the occurrence of such other default, as applicable, at a rate (the **Default Rate**) equal to the lesser of (x) a percentage equal to two times the interest rate set forth in Section 2(A) above, or (y) the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (iii) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (iv) during the time that any monthly installment under this Note is delinquent for ten (10) calendar days or more, Lender will incur substantial economic damages and losses, including without limitation, loss related to the time value of money, additional costs and expenses, and damages arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; (v) during the time that any monthly installment under this Note is delinquent for ten (10) calendar days or more or any other event of default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk; and (vi) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate is not intended as a penalty and represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs, expenses, economic damages and losses, and increased risk of nonpayment, Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. Lender's reasonable pre-estimate of additional expenses economic damage and losses, and increased risk of nonpayment will not require claim for, or proof of, actual damages and Lender's determination thereof shall be conclusive and binding. Borrower agrees that the Default Rate contemplated herein shall not be exclusive and Lender may be additionally compensated by late fees and other fees as specifically outlined in the Note. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments. Acceptance of the Default Rate interest will not constitute a waiver of any default with

respect to the applicable overdue payment and will not prevent Lender from exercising any other rights and remedies available to it under this Note.

**3.  PAYMENTS.**

(A)    **Time and Place of Payments.** I will pay accrued interest by making interest-only payments every month. I will make my monthly payment on the first (1st) day of each month beginning on May 1, 2019. Each monthly payment will be applied as of its scheduled due date and will be applied to interest. If I still owe amounts under this Note on the Maturity Date. I will pay those amounts in full on that date. *Maturity Date* means April 1, 2020. I will make all payments at the address set forth above for Lender, or at a different place if required by the Note Holder.

(B)    **Amount of Monthly Payments.** Borrower's monthly payment will initially be in the amount of U.S. $4,208.75. Such amount shall be adjusted by Lender in connection with any subsequent advance hereunder.

(C)    **Application of Payments.** All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to the Note Holder, in such manner and order as the Note Holder may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by the Note Holder of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way: (i) waive or excuse the existence of any default; (ii) waive, impair or extinguish any right or remedy available to the Note Holder hereunder or under any other loan documents executed in connection herewith (the *Loan Documents*); or (iii) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. (Pacific Time) shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or under any other Loan Documents executed in connection herewith falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

**4.      PURPOSE OF THE LOAN.**

(A) **Purpose of the Loan.** The purpose of the Loan is to provide Borrower with acquisition, refinance and/or construction financing in order to: (i) purchase certain real property and improvements encumbered by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the *Security Instrument*) executed by Borrower in favor of Lender in connection with this Note; and perform certain renovations and construction activities to the existing single family residence located thereon (such renovations and construction activities shall be hereinafter referred to as the *Improvements*), or (ii) utilize funds for a business purpose, as permitted by Lender. Each real property and its improvements encumbered by the Security Instrument shall be hereinafter referred to as the *Property*.

(B) **Initial Advance.** Upon the closing of the Loan, the initial funding under the Loan for the Borrower's acquisition or refinance of the Property shall be limited to the amount of $546,000.00.

(C) **Funding for Construction of the Improvements.** Following the initial advance of the Loan as set forth in Section 4(B) above (and subject to the terms and conditions of this Note), the remaining principal balance of the Loan (such total remaining amount, the *Improvement Advance Amount*) shall be made

available to Borrower for the payment, or reimbursement of payments, of certain of Borrower's costs to perform the Improvements. Borrower will receive each advance in trust for the purpose of paying only actual costs for which the advance is made and will utilize the funds advanced for no other purpose.

(D) **Required Documents.** Following the initial advance of the Loan as set forth in Section 4(B) above, prior to any subsequent disbursements of the proceeds of the Loan for the renovation and/or construction of the Improvements, Borrower shall execute and deliver, or cause to be executed and delivered to Lender such documents and items as Lender shall request (which, when executed and delivered to Lender shall be deemed Loan Documents hereunder), all in form and substance acceptable to Lender in Lender's sole discretion. Such documents and items may include, but not be limited to, the following:

(i) **Construction Contract.** The construction contract (the *Construction Contract*) for the Property and Improvements, executed by and between Borrower and a Nevada licensed general contractor (*Contractor*) to participate in the construction of the Improvements in accordance with the plans and specifications and architectural and/or engineering drawings for the Improvements (collectively, the *Plans and Specifications*) all in form and content reasonably acceptable to Lender.

(ii) **Contractor's and Subcontractor's License/Insurance.** Copies of Contractor's licenses and any other subcontractor's (as may be required by Lender), together with proof of Contractor's worker's compensation and public liability insurance coverage.

(iii) **Collateral Assignment of Contracts and Documents.** A collateral assignment of all necessary contracts related to the Improvements (including without limitation the Construction Contract, any architect's contract, any engineer's contract, and the Plans and Specifications), from Borrower to Lender assigning any and all rights, title and interest which Borrower shall have under the same.

(iv) **Plans and Specifications.** One (1) set of the approved site plan and the complete and detailed Plans and Specifications which Borrower shall have approved in writing, including any changes or modifications thereto to the date of receipt by Lender, and any and all construction contracts or other documents in the possession or control of Borrower or any contractor relating to the construction of the Improvements. The sets must be stamped with all required approvals from all applicable governmental authorities; certified under seal and signed by Borrower and Contractor to be true copies of the Plans and Specifications and approved by all authorities and agencies having jurisdiction thereon. No changes shall be made thereafter in the Plans and Specifications without the prior written consent of the Lender, except as set forth herein; and provided, however, that changes to the Plans and Specifications which will not adversely affect the value of the Improvements shall be permitted without the prior written consent of the Lender.

(v) **Notice of Commencement.** A notice of commencement (or its equivalent) meeting such requirements as Lender may require, including without limitation requirements with respect execution, recordation, posting, naming of additional parties for notices, and duration.

(vi) **Project/Budget.** A detailed and itemized construction and non-construction cost (soft costs) breakdown on Lender approved forms of all costs including specification of which items are to be funded from sources other than the Loan (the *Budget*). The aggregate contract price for constructing and equipping the Improvements in accordance with the Plans and Specifications and representations made to Lender and all other costs of the Improvements being financed with the Loan proceeds and pursuant to the terms and conditions hereof shall not exceed the amount allocated and described in the Budget. Borrower shall furnish such additional supporting documentation for the cost of the items described in the Budget as may be required by Lender.

3



(vii)   **Lien Waivers.**  Original waivers of lien from Contractor and each and every subcontractor, laborer or material supplier performing services or supplying material to the Property within the past ninety (90) days and an affidavit listing all of said entities and certifying that no work has been performed and no materials have been supplied for which the costs remain unpaid prior to closing.

(E) **Draw Requests.**  Advances shall be made (i) not more frequently than ten (10) times during the term of this Note, (ii) not more frequently than once in any calendar month  (iii) in a minimum amount that is not less than $73,500.00 of the Improvement Advance Amount (unless otherwise approved by Lender in Lender's sole discretion), and (vi) in an amount not to exceed one hundred percent (100%) of unreimbursed costs actually previously paid by Borrower or actually incurred by Borrower that are to be paid from proceeds of the Loan set forth in the Budget.  Notwithstanding the foregoing, the final advance (*Final Advance*) under this Section 4 shall not be less than $147,000.00 of the Improvement Advance Amount. Each draw shall be based on a draw request signed by Borrower in such form approved by Lender and shall be reviewed by the Lender's construction consultant (the *Consultant*) and, if requested by Lender, signed by Contractor.  Each draw request shall contain any written warning required of Lender by applicable local law (e.g., requiring lenders, when making disbursements directly to owners, to give written warning to such owners that to protect themselves from double payments, lien releases from each lienor should be required from the contractor), and shall be supported by such information and documentation (such as paid receipts, invoices, statements of accounts, lien releases, etc.) as Lender may require.

(F) **Additional Terms Regarding Advances.**  Lender shall not be obligated to make an advance of Loan proceeds until and unless the following additional items shall have been received, complete and/or approved by Lender, as and to the extent required by Lender, prior to the date of the advance:

(i)   A notice of title continuation or endorsement to the title insurance policy with respect to the Loan, showing there has been no change in the status of title and no other exception not theretofore approved by Lender, which endorsement shall have the effect of advancing the effective date of the policy to the date of the advance then being made and increasing the coverage of the policy by an amount equal to the such advance.

(ii)   Evidence that all work requiring inspection by any governmental authority having or claiming jurisdiction has been duly inspected and approved by such authority and by any rating or inspection organization, bureau, association or office having or claiming jurisdiction.

(iii)   Evidence, including a report from the Consultant, that all work completed at the time of the application for an advance has been performed in a good and workmanlike manner in accordance with the Plans and Specifications, that all materials and fixtures usually furnished and installed at that stage of construction have been so furnished and installed, that the Improvements can be completed in accordance with the Plans and Specifications, and that the balance of the Loan proceeds then held by Lender and available for advance pursuant to the terms of this Note, together with other funds which Lender determines to be available to Borrower for such purpose, are and will be sufficient to pay the cost of such completion.

(iv)   Borrower shall comply with any applicable Nevada prompt payment statute (the *Prompt Payment Statute*). Notwithstanding Lender's failure or delay in funding any draw requests or Lender's cessation of funding draw requests in accordance with the terms of this Note, Borrower hereby agrees to provide all required notices to the Contractor and all lienors providing notices to owner in compliance with the Prompt Payment Statute, and authorizes Lender to provide written notices to the same to the extent such notices are required by law.  Borrower shall also comply with any and all other laws related to prompt payment and provision of notices.  Borrower represents and warrants to Lender that Borrower that Borrower is the "Owner" for purposes of the Prompt Payment Statute.  Lender shall not be an "Owner" for purposes of the

10804_Note -NV (Rehab Adv)(JAM 20190319)

Prompt Payment Statute nor a "third party designated by Owner as the person responsible for making progress payments on a construction contract" (a "Designated Payor") as used in the Prompt Payment Statute. Borrower shall not cause or permit any statements or representations to be made or agreements to be entered into pursuant to which Lender would or might be asserted to be a Designated Payor. Borrower's obligation of compliance with the Prompt Payment Statute shall not in any way expand the obligations of Lender hereunder and Lender shall at all times retain the right to approve or disapprove advances in accordance with the terms of this Note regardless of Borrower's obligations to Contractor or any other contractor. In no event will Lender have any liability or obligation to Borrower or any other person to approve advances or make advances within any time periods required pursuant to the Prompt Payment Statute, nor will Lender have any liability or obligation for costs, fees, expenses, or damages of any nature incurred by Borrower by reason of any failure to comply with the Prompt Payment Statute.

(v)     Borrower shall submit, do, and perform all such other items and actions which Lender shall reasonably require.

(G) **Conditions Precedent to All Advances.**  Lender shall not be obligated to make an advance of Loan proceeds unless the following additional conditions shall have been satisfied or waived in writing by Lender as of the date of each advance:  (i) No lien for the performance of work or supplying of labor, materials or services shall have been filed against the Property and remain unsatisfied or unbonded, (ii) no condition or situation shall exist on the Property which, in the reasonable determination of Lender, constitutes a danger to or impairment of the Property or presents a danger or hazard to the public, (iii) all representations and warranties made by Borrower in this Note and the other Loan Documents shall be true and correct on and as of the date of the advance with the same effect as if made on such date, (iv) all terms and conditions of the Loan Documents required to be met as of the date of the applicable advance shall have been met to the satisfaction of Lender, (v) Borrower shall have paid all fees and expenses incurred by Lender and/or Borrower in connection with such advance, including without limitation Lender's administrative fee,  and (vi) no event of default shall have occurred and be continuing.

(H) **Final Advance.**  Lender shall not be obligated to make the Final Advance of the Loan unless the following additional conditions shall have been satisfied, to the extent required by Lender:

(i)     The Consultant shall have certified to Lender that all construction has, and Improvements have, been completed in a good and workmanlike manner, in accordance with applicable requirements of all applicable governmental authorities and substantially in accordance with the Plans and Specifications;

(ii)     To the extent required by applicable governmental authorities for the use and occupancy of the Improvements, certificates of occupancy and other applicable permits and releases shall have been issued with respect to the Improvements and copies thereof have been furnished to Lender;

(iii)     Lender shall have received a satisfactory final affidavit from the Contractor and full and complete releases of lien from the Contractor and each subcontractor, laborer and materialman and any other party who has supplied labor, materials or services for the construction of the Improvements, or who otherwise might be entitled to claim a contractual, statutory or constitutional lien against the Property with respect to work performed and/on materials supplied in the construction of the Improvements;

(iv)     Lender shall have received a satisfactory endorsement to its title insurance policy;

(v)     Lender has received such other items which Lender shall reasonably require to be submitted by Borrower; and



(vi)     All other terms and conditions of this Note and the other Loan Documents required to be met as of the date of the Final Advance of the Loan for hard costs shall have been met to the satisfaction of Lender.

(I) **Advances for Stored Materials.**  Notwithstanding anything to the contrary contained herein, no advances will be made for building materials or furnishings that have not yet been incorporated into the Improvements (**Stored Materials**) unless: (i) Borrower has good title to the Stored Materials and has furnished satisfactory evidence of such title to Lender, to the extent required by Lender; (ii) the Stored Materials are components in a form ready for incorporation into the Improvements and will be so incorporated within a reasonable period (not to exceed thirty [30] days) from the date of the advance for the Stored Materials; (iii) the Stored Materials are in Borrower's possession and are satisfactorily stored on the Property or at such other location as Lender may approve, in each case with adequate safeguards to prevent commingling with materials for other projects; (iv) the Stored Materials are protected and insured against loss, theft and damage in a manner and amount satisfactory to Lender; (v) the Stored Materials have been paid for in full or will be paid for in full from the funds to be advanced; (vi) Lender has or will have upon the payment for the Stored Materials from the advanced funds a perfected, first priority security interest in the Stored Materials; and (vii) all lien rights and claims of the supplier have been released or will be released upon payment with the advanced funds..

(J) **Liability of Lender.**  Lender shall in no event be responsible or liable to any person other than Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and neither the Contractor, Consultant, nor any subcontractor, laborer or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

5.       ***BORROWER'S RIGHT TO PREPAY.***

(A) Borrower may prepay the Loan, in whole or in part, subject to the payment of a Prepayment Charge. Unless prohibited by Applicable Law, Borrower shall pay a prepayment penalty for both voluntary and involuntary prepayments.  *Prepayment Charge* means the amount, if any, by which (i) three (3) times the Monthly Payment amount set forth in Section 3(B) above, exceeds (ii) actual Monthly Payments received by Lender through the date of such prepayment.

(B) **Prepayment Penalty Upon Acceleration.**  The Prepayment Charge shall be charged upon the occurrence of any prepayment upon Lender's acceleration of the Loan.



BORROWER HEREBY EXPRESSLY WAIVES ANY RIGHTS IT MAY HAVE TO PREPAY THIS NOTE, IN WHOLE OR IN PART, WITHOUT PAYMENT OF A PREPAYMENT CHARGE, UPON ACCELERATION OF THE MATURITY DATE OF THIS NOTE, AND AGREES THAT IF, FOR ANY REASON, A PREPAYMENT OF ANY OR ALL OF THIS NOTE IS MADE UPON OR FOLLOWING ANY ACCELERATION OF THE MATURITY DATE OF THIS NOTE BY HOLDER ON ACCOUNT OF ANY DEFAULT BY BORROWER, INCLUDING, BUT NOT LIMITED TO, ANY TRANSFER, DISPOSITION OR FURTHER ENCUMBRANCE AS PROHIBITED OR RESTRICTED BY THE NOTE OR SECURITY INSTRUMENT, THEN BORROWER SHALL BE OBLIGATED TO PAY, CONCURRENTLY THEREWITH, AS A PREPAYMENT CHARGE, THE APPLICABLE SUM SPECIFIED IN THE NOTE. BY INITIALING THIS PROVISION IN THE SPACE PROVIDED BELOW, BORROWER HEREBY DECLARES THAT HOLDER'S AGREEMENT TO MAKE THE LOAN EVIDENCED BY THIS NOTE AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THIS NOTE CONSTITUTES ADEQUATE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY BORROWER, FOR THIS WAIVER AND AGREEMENT.

BORROWER'S INITIALS: By

6. **LOAN CHARGES.** If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED.**

(A) **Late Charge for Overdue Payments.** If Note Holder has not received the full amount of any monthly installment by the end of five (5) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ten percent (10%) of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) **Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. Upon any failure by me to pay any amount owing under this Note when due, then the Note Holder shall be entitled, immediately and without notice to me, to exercise any and all rights and remedies available to the Note Holder including without limitation acceleration of all amounts owing under this Note and the Loan. Further, the Note Holder also will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the address set forth above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at such address, or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE.**

10804_Note -NV (Rehab Adv)(JAM 20190319)

7

(A)  If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person/entity individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. As used in this Note, person means any individual and/or business entity, as applicable.

(B)  If Borrower is a partnership or limited liability company, the agreements contained in this Note shall remain in force and be applicable, notwithstanding any changes in the individuals or entities comprising the partnership or limited liability company, and the term *Borrower*, as used herein, shall include any alternate or successor partnership or limited liability company, but any predecessor partnership or limited liability company and their partners or members shall not thereby be released from any liability. If Borrower is a corporation, the agreements contained in this Note shall remain in full force and be applicable notwithstanding any changes in the shareholders comprising, or the officers and directors relating to, the corporation, and the term *Borrower* as used herein, shall include any alternative or successor corporation, but any predecessor corporation shall not be relieved of liability hereunder. Nothing in the foregoing two sentences shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in such partnership, limited liability company or corporation, as applicable, which may be set forth in the Security Instrument executed in connection with this Note, or any other loan document.

10.        *WAIVERS.* I and any other person who has obligations under this Note waive the rights of Presentment, and Notice of Dishonor. *Presentment* means the right to require the Note Holder to demand payment of amounts due. *Notice of Dishonor* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. No release of any security for the Loan or extension of time for payment, of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note or the other Loan Documents made by agreement between Lender or any other Person shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other Person who may become liable for the payment of all or any part of the Loan, under this Note.

11.        *MODIFICATIONS.* This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

12.        *WAIVER OF RIGHT TO JURY TRIAL.* I HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, LAWSUIT OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO: (a) THIS NOTE OR ANY SUPPLEMENT OR AMENDMENT THERETO; OR (b) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN ME AND THE LENDER, INCLUDING THE SECURITY INSTRUMENT; (c) ANY BREACH, CONDUCT, ACTS OR OMISSIONS BY ME OR ANY OF MY DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSON AFFILIATED WITH OR REPRESENTING ME; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. I WAIVE MY RIGHT TO TRIAL BY JURY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT COUNSEL.



13.      **SECURED NOTE.**  In addition to the protections given to the Note Holder under this Note, the Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

      **(A)**  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

      **(B)**  If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with a Section within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

14.      **FULL POWER AND AUTHORITY.**  I and each individual executing this Note on my behalf has the full power and authority to execute and deliver this Note, and this Note constitutes my valid and binding obligation and is enforceable in accordance with its terms.

15.      **GOVERNING LAW.**  Any invalidity or unenforceability of any provision or application of this Note shall not affect other lawful provisions and applications hereof, and to this end the provisions of this Note are declared to be severable.  This Note shall be construed according to the law of the State of Nevada.

*[SIGNATURE PAGE TO FOLLOW]*



**IN WITNESS WHEREOF,** I have duly executed this Note as of the day and year first above written.

**BORROWER:**

James White and Jean White,
Husband and Wife as Joint Tenants,

By: _____
Name: James White

By _____
Name: Jean White



**ALLONGE TO NOTE**

LOAN NUMBER:                 10804

NOTE DATE:                   March 19, 2019

BORROWER:                    James White and Jean White

ORIGINAL LOAN AMOUNT:        $840,000.00


PAY TO THE ORDER OF 5 ARCH FUNDING CORP., without recourse, representation or warranty, express or implied.


PINNACLE LENDING GROUP, INC.

By:

Name: Robert Rink
Title:   President

# ALLONGE TO NOTE

LOAN NUMBER:              10804
NOTE DATE:                March 19, 2019
BORROWER:                 Jean White and James White
ORIGINAL LOAN AMOUNT:     $840,000.00

This Allonge to Note endorses, assigns and conveys all of the signing entity's interest in the above-referenced Note to the indicated entity, in the order shown below:

ALLONGE 1:

PAY TO THE ORDER OF 5 ARCH INCOME FUND 2, LLC, without recourse representation or warranty, express or implied.

5 ARCH FUNDING CORP.

By: _____
       Egan Park, Authorized Signor

ALLONGE 2:

PAY TO THE ORDER OF 5AIF MAPLE, LLC without recourse representation or warranty, express or implied.

5 ARCH INCOME FUND 2, LLC

By: _____
       Egan Park, Authorized Signor

ALLONGE 3:

PAY TO THE ORDER OF 5AIF MAPLE 2, LLC without recourse representation or warranty, express or implied.

5AIF MAPLE, LLC

By: _____
       Egan Park, Authorized Signor

10804 (1)_Allonge 5AFC – MA2(ILL20190319)

# ALLONGE TO NOTE

LOAN NUMBER:             10804
NOTE DATE:               March 19, 2019
BORROWER:                James White and Jean White
ORIGINAL LOAN AMOUNT:    $840000

This Allonge to Note endorses, assigns and conveys all of the signing entity's interest in the above-referenced Note to the indicated entity, in the order shown below:

ALLONGE 1:

PAY TO THE ORDER OF 5AIF Juniper 2 DEP, LLC without recourse representation or warranty, express or implied.

5AIF Maple 2, LLC

By:  _Patricia M. Loon_
     Patricia McLoon, Authorized Signor


ALLONGE 2:

PAY TO THE ORDER OF 5AIF Juniper 2, LLC without recourse representation or warranty, express or implied.

5AIF Juniper 2 DEP, LLC

By:  _Patricia M. Loon_
     Patricia McLoon, Authorized Signor

10804_(1) Allonge Maple 2-Juniper 2 (CL 20190402) •InitialsDate•

# Exhibit 2

Inst #: 20190327-0001601
Fees: $40.00
03/27/2019 10:26:03 AM
Receipt #: 3666866
Requestor:
PREMIUM TITLE AGENCY, INC
Recorded By: SCA   Pgs: 28
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

APN: 139-32-210-007

After Recording Return To:
Pinnacle Lending Group, Inc.
6475 S. Rainbow Blvd., Suite 102
Las Vegas, Nevada 89118

_____/Space Above This Line For Recording Data/_____

### DEED OF TRUST, ASSIGNMENT OF RENTS,
### SECURITY AGREEMENT AND FIXTURE FILING

#### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 8, 14, 16, 23, 25 and 26. Certain rules regarding the usage of words used in this document are also provided in Section 21.

**(A)** *"Security Instrument"* means this Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing, which is dated March 19, 2019, together with all Riders to this document.

**(B)** *"Borrower"* is James White and Jean White, Husband and Wife as Joint Tenants. Borrower is the trustor under this Security Instrument. Borrower's address is 34 Blackbird Ln, Aliso Viejo CA 92656.

**(C)** "*Principal*" is N/A, and/or any other person who has or obtains an ownership interest in Borrower.

**(D)** *"Lender"* is Pinnacle Lending Group, Inc.. Lender is a Nevada corporation organized and existing under the laws of Nevada. Lender's address is 6475 S. Rainbow Blvd., Suite 102, Las Vegas, Nevada 89118. Lender is the beneficiary under this Security Instrument.

**(E)** *"Note"* means the promissory note signed by Borrower and dated March 19, 2019. The Note states that Borrower owes Lender Eight Hundred Forty Thousand and 00/100 Dollars (U.S. $840,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than the Maturity Date referenced in the Note.

**(F)** *"Property"* means the property that is described below under the heading *"Grants/Transfer of Rights in the Property."*

**(G)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

    ☐ Adjustable Rate Rider        ☐ Condominium Rider

    ☐ Planned Unit Development Rider     ☐ Other(s) /specify/ _____

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

10804 DOT-AR-SA-FF JAM 20190319



**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Easements"* means all easements, rights of way or use, streets, alleys, passages, sewer rights, water rights, development rights, and appurtenances of any nature, whatsoever, in any way now or hereafter, belonging, relating, or pertaining to the Land and the Improvements.

**(L)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** *"Escrow Items"* means those items that are described in Section 3.

**(N)** *"Fixtures"* means all equipment and goods now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the equipment or goods are located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, appliances, attached mirrors, cabinets, paneling, floor coverings, machinery, blinds, shades, curtains and curtain rods, storm doors, storm windows, awnings, washers, dryers, fixtings, apparatuses, fixtures and other items now or hereafter attached to, installed in, or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Property, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof. Notwithstanding the foregoing, *"Fixtures"* shall not include any property which tenants are entitled to remove pursuant to leases except to the extent that Borrower shall have any right or interest therein.

**(O)** *"Improvements"* means the buildings, structures, fixtures, additions, extensions, modifications, replacements and improvements now or hereafter erected or located on the Land.

**(P)** *"Land"* means the real property and/or leasehold interest in the real property, described in Exhibit A attached hereto and made a part hereof, and located at 316 Lacy Lane Las Vegas NV 89107 (*"Property Address"*).

**(Q)** *"Leases"* includes any current or future leases of all or any portion of the Property, including without limitation any extensions or renewals thereof and any amendments thereto consented to by Lender.

**(R)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (1) damage to, or destruction of, the Property; (2) condemnation or other taking of all or any part of the Property; (3) conveyance in lieu of condemnation; or (4) misrepresentations of, or omissions as to, the value and/or condition of the Property.



**(S) "*Mortgage Insurance*"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(T) "*Periodic Payment*"** means the regularly scheduled amount due for (1) principal and interest under the Note, plus (2) any amounts under Section 3 of this Security Instrument.

**(U) "*Rents*"** means all rentals, earnings, income, deposits, security deposits (subject to the right of tenants, if any), receipts, royalties, revenues, issues and profits, and accounts receivable generated from the use and operation of all or any portion of the Property, which, after the date hereof, and while any portion of the indebtedness secured hereby remains unpaid, may accrue from the Property and any part thereof.

**(V) "*Successor in Interest of Borrower*"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(W) "*Trustee*"** is Premium Title.

## GRANTS/TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (1) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (2) the performance of Borrower's covenants and agreements under this Security Instrument, the Note and all other documents executed or delivered in connection with the Loan, together with any renewals, extensions, modifications or replacements of any of these documents. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale and right of entry and possession, all estate, right, title and interest of Borrower, now or hereafter acquired, in, to and under the Land, together with (i) all the Improvements now or hereafter erected on the Land, (ii) all Easements, appurtenances, and Fixtures now or hereafter a part of or located upon the Land or Improvements, (iii) all Escrow Rights and Miscellaneous Proceeds, and (iv) all Leases and Rents. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "*Property*."

**BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

## OBLIGATIONS/AGREEMENT

Borrower represents, covenants and agrees with Lender as follows:

1.   *Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.* Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 20. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current,



without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. *Application of Payments or Proceeds.*** Except as otherwise described in this Section, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note. Notwithstanding the foregoing, Lender, in its sole discretion, may at any time apply payments in such other order and manner as Lender may elect.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. *Funds for Escrow Items.*** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the *"Funds"*) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 13. These items are called *"Escrow Items."* At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 12. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 12 and pay such amount and Borrower shall then be obligated under Section 12 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in



accordance with Section 20 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount sufficient to permit Lender to apply the Funds when due. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items when due. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds.

If there is a surplus of Funds held in escrow, Lender shall account to Borrower for the excess funds and shall either refund the surplus Funds or apply them to the next year's escrow payments, at Lender's sole discretion. If there are insufficient amount of Funds to pay the Escrow Items when due, Lender shall notify Borrower, and Borrower shall pay to Lender the amount necessary to make up the shortage as Lender requires, in its sole discretion, but in no more than 6 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

   **4.   Charges; Liens.**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues. Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender (in Lender's sole and absolute discretion), but only so long as Borrower is performing such agreement; or (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's sole and absolute opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5.   Property/Rental Loss Insurance.**   Borrower shall keep the Improvements and Fixtures now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. Borrower shall also maintain rental loss insurance. All insurance hereunder shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's



choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 27 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount



not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  *Loan Purpose; Occupancy.***  This Loan is for a business purpose and under no circumstance shall Borrower occupy, establish, or use the Property, or any part thereof, as Borrower's residence or the residence of any Principal.

**7.  *Preservation, Maintenance and Protection of the Property; Inspections.***  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in good and safe condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition.  The Improvements and the Fixtures shall not be removed from the Property, demolished or materially altered (except for normal replacement of these items and refurbishment of the Improvements) without Lender's written consent.

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.  Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured.  Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  *Security Agreement.***  This Security Instrument is both a real property mortgage or deed of trust, and a "security agreement" and a financing statement within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby pledges, assigns and grants to Lender and Trustee, as security for the Loan, a continuing security interest in the Fixtures, and the other property constituting the Property to the full extent that the Fixtures, and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "***Collateral***").  If Borrower is in default under the Note or this Security Instrument, Lender or Trustee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code or otherwise provided at law or in equity, including, without limiting the generality of the foregoing, the right to take possession of



the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Lender or Trustee after the occurrence and during the continuance of a default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender or Trustee at a convenient place (at the Land if tangible property) reasonably acceptable to Lender. Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender or Trustee in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of a default. Any notice of sale, disposition or other intended action by Lender or Trustee with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) business days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower. The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of any amounts due under the Note or this Security Instrument in such priority and proportions as Lender in its discretion shall deem proper.

All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

**9. Fixture Filing.** Certain of the Property is or will become "*Fixtures*" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such Fixtures are situated, shall operate also as a financing statement (naming Borrower as the Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of the Uniform Commercial Code upon such of the Property that is or may become Fixtures. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower.

**10. *Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession.***

(a) As part of the consideration for the obligations secured by the Security Instrument, Borrower absolutely, irrevocably and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of the jurisdiction where the Property is located (the "*Property Jurisdiction*"), then each of the Leases and Rents shall be included as part of the Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.



(b)  Until a default by Borrower has occurred and is continuing, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the loan documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay the Periodic Payments and the other amounts then due and payable under the other loan documents, and to pay the current costs and expenses of managing, operating and maintaining the Property, including utilities and other assessments (to the extent not included in the Escrow Items, if Borrower is making monthly payments for these Items), tenant improvements and other capital expenditures.  So long as no default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute a default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

(c)  If a default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, the revocable license granted to Borrower pursuant to the immediately preceding subsection (b) shall automatically terminate, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid.  During the continuance of a default, Borrower authorizes Lender to collect, sue for and compromise Rents and directs each tenant of the Property to pay all Rents to, or as directed by, Lender, and Borrower shall, upon Borrower's receipt of any Rents from any sources, pay the total amount of such receipts to Lender.  Although the foregoing rights of Lender are self-effecting, at any time during the continuance of a default, Lender may make demand for all Rents, and Lender may give, and Borrower hereby irrevocably authorizes Lender to give, notice to all tenants of the Property instructing them to pay all Rents to Lender.  No tenant shall be obligated to inquire further as to the occurrence or continuance of a default, and no tenant shall be obligated to pay to Borrower any amounts that are actually paid to Lender in response to such a notice.  Any such notice by Lender shall be delivered to each tenant personally, by mail or by delivering such demand to each rental unit.

(d)  If a default has occurred and is continuing, Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower, and even in the absence of waste, enter upon, take and maintain full control of the Property, and may exclude Borrower and its agents and employees therefrom, in order to perform all acts that Lender, in its discretion, determines to be necessary or desirable for the operation and maintenance of the Property, including the execution, cancellation or modification of Leases, the collection of all Rents (including through use of a lockbox, at Lender's election), the making of repairs to the Property and the execution or termination of contracts providing for the management, operation or maintenance of the Property, for the purposes of enforcing this assignment of Rents, protecting the Property or the security of this Security Instrument and the Loan, or for such other purposes as Lender in its discretion may deem necessary or desirable.

(e)  Notwithstanding any other right provided Lender under this Security Instrument or any other loan document, if a default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and without the necessity of giving prior notice (oral or written) to Borrower, Lender shall have the right to an appointment of a receiver and Lender may apply to any court having jurisdiction for the appointment of a receiver for the Property to take any or all of the actions set forth in this Section.  If Lender elects to seek the appointment of a receiver for the Property at any time after a default has occurred and is continuing, Borrower, by its execution of this Security Instrument,

expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver. Lender or the receiver, as applicable, shall be entitled to receive a reasonable fee for managing the Property and such fee shall become an additional part of the Loan. Immediately upon appointment of a receiver or Lender's entry upon and taking possession and control of the Property, possession of the Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Property, and all security deposits and prepaid Rents, shall be surrendered to Lender or the receiver, as applicable. If Lender or receiver takes possession and control of the Property, Lender or receiver may exclude Borrower and its representatives from the Property.

(f) The acceptance by Lender of the assignments of the Leases and Rents pursuant to this Section shall not at any time or in any event obligate Lender to take any action under any loan document or to expend any money or to incur any expense. Lender shall not be liable in any way for any injury or damage to person or property sustained by any person in, on or about the Property. Prior to Lender's actual entry upon and taking possession and control of the Land and Improvements, Lender shall not be:

(i) obligated to perform any of the terms, covenants and conditions contained in any Lease (or otherwise have any obligation with respect to any Lease);

(ii) obligated to appear in or defend any action or proceeding relating to any Lease or the Property; or

(iii) responsible for the operation, control, care, management or repair of the Property or any portion of the Property.

The execution of this Security Instrument shall constitute conclusive evidence that all responsibility for the operation, control, care, management and repair of the Property is and shall be that of Borrower, prior to such actual entry and taking possession and control by Lender of the Land and Improvements.

(g) Lender shall be liable to account only to Borrower and only for Rents actually received by Lender. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property by reason of any act or omission of Lender under this Section, and Borrower hereby releases and discharges Lender from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Property and collecting the Rents, any funds expended by Lender for such purposes shall be added to, and become a part of, the principal balance of the Loan, be immediately due and payable, and bear interest at the Default Rate, if any, from the date of disbursement until fully paid. Any entering upon and taking control of the Property by Lender or the receiver, and any application of Rents as provided in this Security Instrument, shall not cure or waive any default or invalidate any other right or remedy of Lender under applicable law or provided for in this Security Instrument or any loan document.

(h) In addition to all other obligations under this Security Instrument, Borrower agrees to provide Lender (within 10 business days of Lender's request) (i) a full, complete and updated Certificate of Leases and Rent Roll in form and substance acceptable to Lender, (ii) a copy of all Leases and (iii) such evidence as Lender deems reasonably necessary to show each respective tenant's payment of his/her/their obligations under such Lease.

Notwithstanding anything to the contrary contained in this Assignment or any of the other loan documents, Assignee shall have the right to exercise any and all of its rights and remedies granted it under this Assignment, as well as all remedies available to it under Chapter 107A of the Nevada Revised Statutes or any successor statute.

**11.** *Lender's Reliance on Borrower Representations.* Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's non-occupancy of the Property.

**12.** *Protection of Lender's Interest in the Property and Rights Under this Security Instrument.* If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (including, but not limited to, a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument, regarding Environmental Laws, fraudulent conveyance, or insolvency, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (x) paying any sums secured by a lien which has priority over this Security Instrument; (y) appearing in, defending, or bringing an action or proceeding; and (z) paying fees and out-of-pocket expenses for attorneys, accountants, inspectors and consultants necessary to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section , Lender, in its sole discretion, does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section.

Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**13.** *Mortgage Insurance.* If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make

10904 DOT-AR-SA-FF JAM 20190319

11



separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further, any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**14.  *Assignment of Miscellaneous Proceeds; Forfeiture.***  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in



value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "*Opposing Party*" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 24, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**15.** ***Borrower Not Released; Forbearance By Lender Not a Waiver.*** The failure of Lender to insist upon strict performance of any term of this Security Instrument shall not be deemed a waiver of any term of this Security Instrument. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Borrower shall not be relieved of Borrower's obligations under this Security Instrument by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions of this Security Instrument or of the Note or the other loan documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other loan documents.

**16.** ***Joint and Several Liability; Co-signers; Successors and Assigns Bound.*** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security

10804 DOT-AR-SA-FF JAM 20190319

13



Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 23, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 25) and benefit the successors and assigns of Lender.

**17.  *Relationship of Borrower and Lender.*** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Note, this Security Instrument or any other loan document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**18.  *Further Acts.*** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender and Trustee to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property. Borrower grants to Lender and Trustee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation, such rights and remedies available to Lender pursuant to this Section.

**19.  *Loan Charges.*** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**20.  *Notices.*** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to



have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Borrower's address on the first page of this Security Instrument unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   21. *Governing Law; Severability; Rules of Construction.* This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located (the *"Property Jurisdiction"*). Borrower agrees that any controversy arising under or in relation to this Security Instrument shall be litigated exclusively in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies that arise under or in relation to any security for the Indebtedness. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   22. *Borrower's Copy.* Borrower shall be given one copy of the Note and of this Security Instrument.

   23. *Transfer of the Property or a Beneficial Interest in Borrower.* As used in this Section, *"Interest in the Property"* means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 16 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

10984 DOT-AR-SA-FF JAM 20190319

15



24. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (d) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (e) cures any default of any other covenants or agreements; (f) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (g) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (h) cash; (i) money order; (j) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (k) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 23.

25. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "**Loan Servicer**") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 20) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 27 and the notice of acceleration given to Borrower pursuant to Section 23 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section.

26. **Hazardous Substances.** As used in this Section: (a) "**Hazardous Substances**" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "**Environmental Cleanup**" includes any response action,



remedial action, or removal action, as defined in Environmental Law; and (d) an *"Environmental Condition"* means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (e) that is in violation of any Environmental Law, (f) which creates an Environmental Condition, or (g) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (h) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (i) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (j) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Pursuant to Nevada Law, Lender may bring an action for breach of contract against Borrower for breach of any provision contained in this Section , for the recovery of the environmental damages listed below, and for the enforcement of this Hazardous Substance section and whether or not this Security Instrument has been discharged, reconveyed or foreclosed upon. Notwithstanding the foregoing, no injunction for the enforcement of this Section may be issued after (k) satisfaction of the Loan or (l) transfer of Borrower's right, title and interest in the Property in a bona fide transaction to an unaffiliated third party for fair value.

The damages that Lender may recover pursuant to this section shall be limited to reimbursement or indemnification of the following (collectively, the *"Environmental Damages"*): (m) if not pursuant to an order of any governmental authority relating to the cleanup, remediation, or other response action required by any applicable rule promulgated by a governmental authority, those costs relating to a reasonable and good faith cleanup, remediation, or other response action concerning a release or threatened release of Hazardous Materials (each an *"Environmental Problem"*); (n) if pursuant to an order of any governmental authority, all amounts reasonably advanced in good faith by Lender in connection therewith, provided that Lender negotiated, or attempted to negotiate, in good faith to minimize the amounts it was required to advance under the order; (o) indemnification against all liabilities of Lender to any third party relating to the breach and not arising from acts, omissions or other conduct which occur after Borrower is no longer an owner or operator of the Property; and (p) attorneys' fees and costs incurred by Lender relating to the breach. Notwithstanding the foregoing, the Environmental Damages recoverable by Lender shall not include (q) any part of the principal amount or accrued interest of the Loan, except for any amounts advanced by Lender to cure or mitigate the breach of this Hazardous Substances section that is added to the principal amount, and contractual interest thereon, or (r) amounts which relate to a release which was knowingly permitted, caused or contributed to by Lender or any affiliate or agent of Lender.

Lender shall have the right, but not the obligation, to enter upon the Property, from time to time upon prior reasonable notice, and in its sole and absolute discretion, to conduct inspections of the Property and the activities conducted thereon to determine the compliance with all Environmental Laws, the presence of Hazardous Materials and the existence of any potential damages as a result of the condition of Property. In furtherance thereof, Borrower hereby grants to Lender and its agents, employees and qualified consultants and



contractors, the right to enter upon the Property and to perform such tests on the Property (including invasive tests) as Lender determines are reasonably necessary. Lender shall conduct such inspections and tests at reasonable times, shall use its best efforts to minimize interference with the operation of the Property and agrees to restore the condition of the Property, but Lender shall not be liable for any interference caused thereby unless due to the gross negligence or willful misconduct or omission of Lender. In furtherance of the purposes above, without limitation of any of Lender's other rights, Lender may: (s) obtain a court order to enforce Lender's right to enter and inspect the Property, to which the decision of Lender as to whether there exists any Hazardous Materials on or about the Property in violation of any Environmental Laws, or a breach by Borrower of any environmental provision of this Security Instrument or any of the other loan documents, will be deemed reasonable and conclusive as between the parties; and (t) have a receiver be appointed to enforce Lender's right to enter and inspect the Property for the purpose set forth above.

Borrower and Lender agree that: (u) this paragraph is intended as Lender's written request for information and Borrower's written response concerning the environmental condition of the Property; and (v) each representation, warranty or covenant, or indemnity made by Borrower in this Security Instrument or in the other loan documents that relates to the environmental condition of the Property will survive the payment of the Loan and the termination or expiration of this Security Instrument and will not be affected by Lender's acquisition of any interest in the Property, whether by full credit bid at foreclosure, deed in lieu of foreclosure, or otherwise. If there is any transfer of any portion of Borrower's interest in the Property, any successor-in-interest to Borrower agrees by its succession to that interest that the written request made pursuant to this paragraph will be deemed remade to the successor-in-interest without any further or additional action on the part of Lender and that by assuming the Loan secured by this Security Instrument or by accepting the interest of Borrower subject to the lien of this Security Instrument, the successor remakes each of the representations and warranties in this Security Instrument and agrees to be bound by each covenant in this Security Instrument, including but not limited to any indemnity provision.

**27.  Acceleration; Remedies.**  Notwithstanding anything to the contrary contained in this Security Instrument or any of the other loan documents, in the event of a breach or default hereunder or under any other Loan Document that remains unremedied following any notice and cure or grace period (if any) that is expressly applicable to such breach or default, Lender shall have the right to exercise any and all of its rights and remedies granted it hereunder, as well as all remedies available to it under Nevada law.

In the event of a breach or default hereunder or any other Loan Document that involves the payment of any principal, interest, or fee to Lender, or they payment of any other monetary obligation owing in connection with the Loan or any other monetary obligations secured hereby, Lender shall have no obligation to provide notice to Borrower and may proceed, immediately and without notice, to exercise any and all of its rights and remedies hereunder, including without limitation acceleration of all amounts owing under the Note and the Loan. In the event of a non-monetary breach or default hereunder or under any other Loan Documents that is not subject to the preceding sentence, Lender shall give notice of such default to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 23 unless Applicable Law provides otherwise). If the applicable non-monetary default is not cured within thirty (30) days following delivery of Lender's notice, Lender at its option may accelerate the indebtedness secured hereby and require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee



shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. The proceeds of Trustee's public auction of the Property shall be applied in the following manner: (e) payment of the portion of the Loan attributable to the costs and expenses of the sale; (f) repayment of the portion of the Loan attributable to any sums expended or advanced by Lender (other than the Environmental Damages and costs incurred by Lender with respect to any Environmental Problem) under the terms of this Security Instrument, plus interest at the Default Rate; (g) payment of all other Loan and all other obligations of Borrower secured by this Security Instrument, in any order that Lender chooses; (h) repayment of the portion of the Loan attributable to the Environmental Damages and costs incurred by Lender with respect to any Environmental Problem under the terms of this Security Instrument, plus interest at the Default Rate; and (i) the remainder, if any, to satisfy the outstanding balance of obligations secured by any junior encumbrances in the order of their priority, then to Borrower or Borrower's successor in interest.

In the event of a sale of the Property or any part thereof, the recital in any deed transferring the Property, of (j) the occurrence of a default, (k) the due delivery and/or recordation of breach and election of sale, and (l) the elapsing of the required time period concerning such notices and the eventual sale, will be conclusive proof of the default, recording, election of sale, elapsing of time, and the due giving of notice, and that such sale was regularly and validly made upon proper demand by Lender. Any deed with these recitals will be effectual and conclusive against Borrower, its successors, and assigns, and all other persons. The receipt for the purchase money recited or in any deed executed to the purchaser will be sufficient discharge to the purchaser from all obligations to see to the proper application of the purchase money. In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Lender may also:

(x) exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, and/or the personal property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, and/or the personal property, and (ii) request Borrower at its expense to assemble the Fixtures, and/or the personal property and make it available to Lender or Trustee at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender or Trustee with respect to the Fixtures, and/or the personal property sent to Borrower in accordance with the provisions of this Security Instrument at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(y) apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of this Security Instrument or any other loan document to the payment of the following items in any order in its sole discretion:

(i) Taxes and Other Charges;

(ii) Insurance Premiums;

(iii) Interest on the unpaid principal balance of the Note;

(iv) Amortization of the unpaid principal balance of the Note; or

(v) All other sums payable pursuant to the Note, this Security Instrument and the other loan documents, including advances made by Lender pursuant to the terms of this Security Instrument; and

(z)  pursue such other rights and remedies as Lender may have under applicable law or in equity or under any other loan documents or other documents evidencing or securing any obligation secured hereby.

**28.  *Reconveyance.***   Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it.  Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**29.  *Substitute Trustee.***  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located.  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**30.  *Borrower Representations and Warranties.***  Borrower represents and warrants as of the date hereof that:

(a) **Organization.**  If Borrower is a business entity, Borrower has been duly organized and is validly existing and in good standing with requisite power and authority to own its properties and to transact the business in which it is now engaged.  Borrower is duly qualified to do business and is in good standing in each jurisdiction where it is required to be so qualified in connection with its properties, businesses and operations. Borrower possesses all rights, licenses, permits and authorizations, governmental or otherwise, necessary to entitle it to own its properties and to transact the businesses in which it is now engaged, and the sole business of Borrower is the ownership, management and operation of the Property.  Borrower (i) has complied in all respects with its certificate of incorporation, bylaws, limited partnership agreement, articles of organization and limited liability company operating agreement, as applicable; (ii) has maintained complete books and records and bank accounts separate from those of its Affiliates; (iii) has obeyed all formalities required to maintain its status as, and at all times has held itself out to the public as, a legal entity separate and distinct from any other entity (including, but not limited to, any Affiliate thereof); and (iv) has all requisite power and authority to conduct its business and to own its property, as now conducted or owned, and as contemplated by this Security Instrument, including, without limitation, the power and authority to do business in the state in which the Property is located.  The signatory hereto has all necessary power, authority and legal right to execute this Security Instrument, the Note and the other loan documents on Borrower's behalf to which Borrower is a party.  Guarantor has the necessary power, authority and legal right to execute, deliver and perform its obligations under the Guaranty.

(b) **Proceedings.**  Borrower has taken all necessary action to authorize the execution, delivery and performance of this Security Instrument and the other loan documents.  This Security Instrument and the other loan documents have been duly executed and delivered by or on behalf of Borrower and constitute the legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally,



and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(c) **No Conflicts.** The execution, delivery and performance of this Security Instrument and the other loan documents by Borrower and/or Guarantor, as applicable, will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any Lien, charge or encumbrance (other than pursuant to the loan documents) upon any of the property or assets of Borrower pursuant to the terms of any indenture, mortgage, deed of trust, loan agreement, partnership agreement, management agreement or other agreement or instrument to which Borrower is a party or by which any of Borrower's property or assets is subject, nor will such action result in any violation of the provisions of any legal requirements of any governmental authority having jurisdiction over Borrower or any of Borrower's properties or assets, and any consent, approval, authorization, order, registration or qualification of or with any court or any such governmental authority required for the execution, delivery and performance by Borrower and/or Guarantor, as applicable, of this Security Instrument or any other loan documents has been obtained and is in full force and effect.

(d) **Litigation.** There are no actions, suits or proceedings at law or in equity by or before any governmental authority or other agency now pending or threatened against or affecting Borrower, Guarantor, Principal or the Property, which actions, suits or proceedings, if determined against Borrower, Guarantor, Principal or the Property, might materially adversely affect the condition (financial or otherwise) or business of Borrower, Guarantor, Principal or the condition or ownership of the Property.

(e) **Agreements.** Borrower is not a party to any agreement or instrument or subject to any restriction which might materially and adversely affect Borrower or the Property, or Borrower's business, properties or assets, operations or condition, financial or otherwise. Borrower is not in default in any material respect in the performance, observance or fulfillment of any of the obligations, covenants or conditions contained in any agreement or instrument to which it is a party or by which Borrower or the Property are bound. Borrower has no material financial obligation under any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which Borrower is a party or by which Borrower or the Property is otherwise bound, other than (i) any obligations incurred in the ordinary course of the operation of the Property, and (ii) the obligations under the loan documents.

(f) **Solvency.** Borrower has (i) not entered into the transaction contemplated by the loan documents or executed the Note, or any other loan documents with the actual intent to hinder, delay or defraud any creditor, and (ii) received reasonably equivalent value in exchange for its obligations under such loan documents. After giving effect to the Loan, the fair saleable value of Borrower's assets exceeds and will, immediately following the making of the Loan, exceed Borrower's total liabilities, including, without limitation, subordinated, unliquidated, disputed and contingent liabilities. The fair saleable value of Borrower's assets is and will, immediately following the making of the Loan, be greater than Borrower's probable liabilities, including the maximum amount of its contingent liabilities on its debts as such debts become absolute and matured. Borrower's assets do not and, immediately following the making of the Loan will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted. Borrower does not intend to, and does not believe that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts and liabilities as they mature (taking into account the timing and amounts of cash to be received by Borrower and the amounts to be payable on or in respect of the obligations of Borrower). No Bankruptcy Action exists against Borrower or any Principal, and Neither Borrower nor Principal has ever been a party to a Bankruptcy Action. Neither Borrower nor Principal is contemplating either a Bankruptcy Action or the liquidation of all or a major portion of Borrower's assets or properties, and Borrower has no knowledge of any Person contemplating the filing of any petition against it or any Principal.



(g) **Full and Accurate Disclosure.** No statement of fact made by or on behalf of Borrower in any of the loan documents contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained herein or therein not misleading.  There is no material fact presently known to Borrower which has not been disclosed to Lender which adversely affects, nor as far as Borrower can foresee, might adversely affect, the Property or the business, operations or condition (financial or otherwise) of Borrower or Guarantor.

(h) **Compliance.** Borrower and the Property (including the use thereof) comply in all material respects with all applicable legal requirements, including, without limitation, building and zoning ordinances and codes.  Borrower is not in default or violation of any order, writ, injunction, decree or demand of any governmental authority.  Neither the Improvements as constructed, nor the use of the Property by Tenants under the Leases and the contemplated accessory uses, will violate (1) any legal requirements (including subdivision, zoning, building, environmental protection and wetland protection legal requirements), or (2) any building permits, restrictions or records, or agreements affecting the Property or any part thereof.  Neither the zoning authorizations, approvals or variances nor any other right to construct or to use the Property is to any extent dependent upon or related to any real estate other than the Property.

(i) **Financial Information.** All financial data with respect to the Property and Guarantor, including, without limitation, the statements of cash flow and income and operating expense, that have been delivered to Lender in connection with the Loan (i) are true, complete and correct in all material respects, (ii) accurately represent the financial condition of the Property and Guarantor as of the date of such reports, and (iii) to the extent prepared or audited by an independent certified public accounting firm, have been prepared in accordance with GAAP (or such other accounting basis acceptable to Lender) throughout the periods covered, except as disclosed therein.  Except for Permitted Encumbrances, Borrower does not have any contingent liabilities, liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments that are known to Borrower and reasonably likely to have a materially adverse effect on the Property or the operation thereof as an investment property, except as referred to or reflected in said financial statements.  Since the date of such financial statements, there has been no Material Adverse Change in the financial condition, operation or business of Borrower or Guarantor from that set forth in said financial statements.

(j) **Condemnation.** No Condemnation or other similar proceeding has been commenced or, to Borrower's best knowledge, is threatened or contemplated with respect to all or any portion of the Property or for the relocation of any roadway providing access to the Property.

(k) **Utilities and Public Access.** The Property has rights of access to public ways and is served by water, sewer, sanitary sewer and storm drain facilities adequate to service the Property for its intended uses.  All public utilities necessary or convenient to the full use and enjoyment of the Property are located either in the public right-of-way abutting the Property (which are connected so as to serve the Property without passing over other property) or in recorded easements serving the Property and such easements are set forth in and insured by the Title Insurance Policy.  All roads necessary for the use of the Property for its current purpose have been completed and dedicated to public use and accepted by all Governmental Authorities.  There is no on-site sewage disposal system and the Property is served by a sewer system maintained by a Governmental Authority or property owners association.

(l) **Not a Foreign Person.** Borrower is not a "foreign person" within the meaning of Nevada Law.

(m) **Separate Lots.** The Property is comprised of one (1) or more parcels which constitute a separate tax lot or lots and does not constitute a portion of any other tax lot not a part of the Property.



(n) **Assessments.**   There are no pending or proposed special or other assessments for public improvements or otherwise affecting the Property, nor are there any contemplated improvements to the Property that may result in such special or other assessments.

(o) **Enforceability.**  The loan documents are enforceable by Lender (or any subsequent holder thereof) in accordance with their respective terms, subject to principles of equity and bankruptcy, insolvency and other laws generally applicable to creditors' rights and the enforcement of debtors' obligations. The loan documents are not subject to any right of rescission, set-off, counterclaim or defense by Borrower or Guarantor, including the defense of usury, nor would the operation of any of the terms of the loan documents, or the exercise of any right thereunder, render the loan documents unenforceable (subject to principles of equity and bankruptcy, insolvency and other laws generally affecting creditors' rights and the enforcement of debtors' obligations), and Borrower and Guarantor have not asserted any right of rescission, set-off, counterclaim or defense with respect thereto.

(p) **No Prior Assignment.**  There are no prior assignments of the Leases or any portion of the Rents due and payable or to become due and payable which are presently outstanding.

(q) **Insurance.**  Borrower has obtained and has delivered to Lender certified copies of all Policies, with all premiums paid thereunder, reflecting the insurance coverages, amounts and other requirements set forth in this Agreement.  No claims have been made or are currently pending, outstanding or otherwise remain unsatisfied under any such Policies, and no Person, including Borrower, has done, by act or omission, anything which would impair the coverage of any such Policies.

(r) **Use of Property.**  The Property is owned by Borrower exclusively for commercial purpose, either for repair and resale purposes or for use as a rental single family home or a multi-family apartment complex and other appurtenant and related uses.

(s) **Certificate of Occupancy; Licenses.**  All certifications, permits, licenses and approvals, including without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property as a single family residence or a multi-family apartment complex (collectively, the "*Licenses*"), have been obtained and are in full force and effect.  Borrower shall keep and maintain all Licenses necessary for the operation of the Property as a single family residence or a multi-family apartment complex.  The use being made of the Property is in conformity with the certificate of occupancy issued for the Property.

(t) **Flood Zone.**  None of the Improvements on the Property are located in an area as identified by the Federal Emergency Management Agency as an area having special flood hazards or, if so located, the flood insurance required pursuant to Section 6.1(a)(i) hereof is in full force and effect with respect to the Property.

(u) **Physical Condition.**  The Property, including, without limitation, all buildings, improvements, parking facilities, sidewalks, storm drainage systems, roofs, plumbing systems, HVAC systems, fire protection systems, electrical systems, equipment, elevators, exterior sidings and doors, landscaping, irrigation systems and all structural components are in good condition, order and repair in all material respects. There exists no structural or other material defects or damages in the Property, whether latent or otherwise, and Borrower has not received notice from any insurance company or bonding company of any defects or inadequacies in the Property, or any part thereof, which would adversely affect the insurability of the same or cause the imposition of extraordinary premiums or charges thereon or of any termination or threatened termination of any policy of insurance or bond.

(v) **Boundaries.**  All of the Improvements which were included in determining the appraised value of the Property lie wholly within the boundaries and building restriction lines of the Property, and no improvements on adjoining properties encroach upon the Property, and no easements or other encumbrances

10804 DOT-AR-SA-FF JAM 20190319

23



upon the Property encroach upon any of the Improvements, so as to adversely affect the value or marketability of the Property except those easements or other encumbrances with respect to which the Title Insurance Policy insures against any losses resulting therefrom.

(w) **Leases.** The Property is not subject to any Leases other than the Leases described on the rent roll attached to the Certificate of Leases and Rent Roll. Borrower is the owner and lessor of landlord's interest in the Leases. No Person has any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in full force and effect and there are no defaults thereunder by either party and there are no conditions that, with the passage of time or the giving of notice, or both, would constitute defaults thereunder. The copies of the Leases and any related guaranty (including all amendments thereto) delivered to Lender are accurate, true and complete, and there are no oral agreements with respect thereto. No Rent (other than security deposits, if any) has been paid more than one (1) month in advance of its due date. All work to be performed by the landlord under each Lease has been performed as required in such Lease and has been accepted by the applicable Tenant, and any payments, free rent, partial rent, rebate of rent or other payments, credits, allowances or abatements required to be given by the landlord under such Lease to any Tenant has already been received by such Tenant. There has been no prior sale, transfer or assignment, hypothecation or pledge of any Lease or of the Rents received therein which is still in effect. No Tenant under any Lease has a right or option pursuant to such Lease or otherwise to purchase all or any part of the Property of which the leased premises are a part. Lender shall have the right, but not the obligation, to cure any default of Borrower under any of the Leases and all amounts disbursed in connection with said cure shall be deemed to be disbursements under this Security Instrument and shall be due and payable to Lender promptly following demand.

(x) **Principal Place of Business; State of Organization.** If Borrower is a business entity, (i) Borrower's principal place of business as of the date hereof is the address set forth in the Definitions section of this Security Instrument, and (ii) Borrower is duly organized under the laws of the state of its organization.

(y) **Filing and Recording Taxes.** All transfer taxes, deed stamps, intangible taxes or other amounts in the nature of transfer taxes required to be paid by any Person under applicable legal requirements currently in effect in connection with the transfer of the Property to Borrower have been paid. All mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid by any Person under applicable legal requirements currently in effect in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of any of the loan documents, including, without limitation, the Security Instrument, have been paid or are being paid simultaneously herewith.

(z) **No Change in Facts or Circumstances; Disclosure.** All information submitted by Borrower to Lender including, but not limited to, all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan or in satisfaction of the terms thereof and all statements of fact made by Borrower in this Agreement or in any other Loan Document, are accurate, complete and correct in all material respects. There has been no material adverse change in any condition, fact, circumstance or event that would make any such information inaccurate, incomplete or otherwise misleading in any material respect or that otherwise materially and adversely affects or might materially and adversely affect the use, operation or value of the Property or the business operations and/or the financial condition of Borrower or Guarantor. Borrower and Guarantor have disclosed to Lender all material facts and have not failed to disclose any material fact that could cause any Provided Information or representation or warranty made herein to be materially misleading.

Borrower agrees that all of the representations and warranties of Borrower set forth in this Security Instrument and in the other loan documents shall survive for so long as any amount remains owing to Lender under any of the loan documents by Borrower. All representations, warranties, covenants and agreements

10804 DOT-AR-SA-FF JAM 20190319                                                                                    24



made in the loan documents by Borrower shall be deemed to have been relied upon by Lender notwithstanding any investigation heretofore or hereafter made by Lender or on its behalf.

**31.** *Default Rate Under Note.* Borrower acknowledges that the Note contains a provision regarding a "Default Rate" of interest, which provision is incorporated herein by this reference.

**32.** *Mortgagee-in-Possession.*

Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred in this Security Instrument shall not be construed to make Lender a mortgagee-in-possession of the Property so long as Lender has not itself entered into actual possession of the Land and Improvements.

**33.** *Time is of the Essence.*

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument and the other loan documents, time is of the essence.

**34.** *WAIVER OF TRIAL BY JURY.*

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER AND LENDER (BY ITS ACCEPTANCE HEREOF) (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS SECURITY INSTRUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS BORROWER AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH OF BORROWER AND LENDER, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**"BORROWER":**
James White and Jean White,
Husband and Wife as Joint Tenants


James White

Jean White



_____ /Space Below This Line for Acknowledgment/ _____

**Nevada Notary -- Representative Capacity:**

STATE OF __California_____       )
                                      )
COUNTY OF __Orange_____           )

This instrument was acknowledged before me on _____ , by _____

as _____ of _____.

SEE ATTACH NOTARIAL CERTIFICATE
_____
*(Signature of Notarial Officer)*

| Description of document this notarial certificate is being attached to: | |
|---|---|
| Type/Title | |
| Date of Doc | |
| Number of Pages | |
| Addt'l Signers (other than those named in the notarial certificate.) | |

10804 DOT-AR-SA-FF JAM 20190319

26

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____ )

On __March 19, 2019_____ before me, _____Maria Vasquez, Notary Public_____.
         *Date*                                                      *Here Insert Name and Title of the Officer*

personally appeared _____James White and Jean White_____
                                       *Name(s) of Signer(s)*

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____Maria Vasquez_____
                        *Signature of Notary Public*

MARIA VASQUEZ
Commission No. 2178798
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires FEBRUARY 04, 2021

*Place Notary Seal Above*
——————————— **OPTIONAL** ———————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: DEED OF TRUST, ASSINMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING
Document Date: ___March 19, 2019_____ Number of Pages: _Twenty seven_
Signer(s) Other Than Named Above: ____No Other Signer_____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _James White_____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Individual         ☐ Attorney in Fact
☐ Trustee            ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _Jean White_____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☒ Individual         ☐ Attorney in Fact
☐ Trustee            ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**EXHIBIT A**

**LEGAL DESCRIPTION OF PROPERTY**

That certain property is situated in the County of Clark, State of Nevada and is described as follows:

THE PROPERTY LOCATED IN THE COUNTY OF CLARK AND STATE OF NEVADA DESCRIBED AS FOLLOWS:

LOT ELEVEN (11) IN BLOCK TWO (2) OF EL RANCHO ALTA, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 18 OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

Parcel ID No.: 139-32-210-007

10804 DOT-AR-SA-FF JAM 20190319

27



# Exhibit 3

Inst #: 20190327-0001602
Fees: $40.00
03/27/2019 10:26:03 AM
Receipt #: 3666855
Requestor:
PREMIUM TITLE AGENCY, INC
Recorded By: SGA   Pgs: 4
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

APN: 139-32-210-007

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

S Arch Funding Corp.
19800 MacArthur Boulevard, Suite 1150
Irvine, CA  92612

_____

(Space Above For Recorder's Use)

### ABSOLUTE ASSIGNMENT AND ASSUMPTION OF
### DEED OF TRUST AND LOAN DOCUMENTS

THIS ABSOLUTE ASSIGNMENT AND ASSUMPTION OF DEED OF TRUST AND LOAN DOCUMENTS (this "*Assignment*") is made as of March 19, 2019 (the "*Effective Date*"), by PINNACLE LENDING GROUP, INC. ("*Assignor*").

#### RECITALS:

A.     Concurrently herewith, Assignor has conveyed to S ARCH FUNDING CORP., a California corporation ("*Assignee*") all of Assignor's rights, title and interest in, to and under that certain mortgage loan (the "*Loan*") made by Assignor to James White and Jean White. ("*Borrower*").

B.     In connection with the conveyance of the Loan by Assignor to Assignee, Assignor desires to assign to Assignee and Assignee desires to assume from Assignor all of Assignor's rights, title and interest in, to and under: (i) that certain Note dated as of March 19, 2019 executed by Borrower in the principal amount of $840,000.00 (the "*Note*"); (ii) that certain Deed of Trust, Security Agreement, and Fixture Filing dated as of March 19, 2019 executed by Borrower, as trustor, and recorded in the Official Records of Clark County, Nevada, on ***** _____ as Instrument No. _____ ***** _____ (the "*Deed of Trust*") regarding the real property as more particularly described on Exhibit A attached hereto and incorporated by this reference; and (iii) any and all other documents and instruments executed in connection therewith (the "*Other Documents*"). The Note, the Deed of Trust, and Other Documents, shall be collectively referred to herein as the "*Assigned Loan Documents*."

\*\*\*\*\*\_RECORDED CONCURRENTLY HEREWITH

C.     Assignor has simultaneously herewith endorsed the Note to Assignee and the parties desire that the other Assigned Loan Documents and all other documents relating to or evidencing the Loan be assigned by Assignor and assumed by Assignee.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1.     Assignor hereby absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, all of Assignor's right, title and interest in and to the

Assigned Loan Documents, including, without limitation, all lien rights or other rights or interests in and to the property encumbered by the Deed of Trust, all sums of money due and to become due thereunder and all accrued interest or other charges thereon. Assignor hereby further absolutely, irrevocably and unconditionally sells, assigns, transfers, sets over, conveys and endorses to Assignee, all of Assignor's right, title and interest in and to any and all claims, rights and causes of action, whether in tort or contract, whether known or unknown that Assignor may have against the Borrower and/or any third parties in connection with the Loan, the Assigned Loan Documents and/or the collateral for the Loan.

      2.    This Assignment shall be binding upon and inure to the benefit of Assignee, Assignor and their respective successors and assigns.

      3.    This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada.

      IN WITNESS WHEREOF, Assignor and Assignee have each caused this Assignment to be executed in its name by duly authorized officers as of the date first above written.

ASSIGNOR:

PINNACLE LENDING GROUP, INC.

By: _____

Name:  Robert Rink

Title:  President

**Nevada Notary - Representative Capacity:**

STATE OF _Nevada_ )

COUNTY OF _Clark_ )

This instrument was acknowledged before me on _March 21_ , ~~2017.~~ 2019

by _Robert Rink_ as _President_ of _Pinnacle_

_Lending Group, Inc_

PATRICIA M. JOHNSON
Notary Public
State of Nevada
My Commission Expires: 12-27-2020
Certificate No: 17-1047-1

_Patricia M Johnson_
*(Signature of Notarial Officer)*

10804_Asgnmt DoT – PLG-SAFC (JAM 20190319)       –3–

## EXHIBIT A

THE PROPERTY LOCATED IN THE COUNTY OF CLARK AND STATE OF NEVADA DESCRIBED AS FOLLOWS:

LOT ELEVEN (11) IN BLOCK TWO (2) OF EL RANCHO ALTA, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 18 OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA

Parcel ID No.:139-32-210-007

# Exhibit 4

Inst #: 20190327-0001603
Fees: $40.00
03/27/2019 10:26:03 AM
Receipt #: 3666855
Requestor:
PREMIUM TITLE AGENCY, INC
Recorded By: SCA   Pgs: 3

**DEBBIE CONWAY**
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

**PARCEL NUMBER : 139-32-210-007**

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

SAIF MAPLE 2, LLC
19800 MacArthur Blvd., Suite 1150
Irvine, CA 92612

_____ [Space above line for Recorder's Use Only]

ASSIGNMENT OF
BENEFICIAL INTEREST UNDER DEED OF TRUST

This Assignment of Beneficial Interest Under Deed of Trust (this "*Assignment*") is dated as of March 19, 2019 (the "*Effective Date*"), and made by and among 5 ARCH FUNDING CORP. ("*Funding Corp*"), 5 ARCH INCOME FUND 2, LLC ("*Income Fund*"), SAIF MAPLE, LLC ("*Maple*"), and SAIF MAPLE 2, LLC ("*Maple 2*") (collectively, the "*Parties*").

1.    For good and valuable consideration, the receipt of which is hereby acknowledged, each of the Parties hereby make the following assignments in the following order:

        (A) Funding Corp hereby assigns to Income Fund all of its right, title and interest as beneficiary under that certain Deed of Trust dated March 19, 2019 executed by James White and Jean White, husband and wife as joint tenants as Trustor, to Premium Title as Trustee, and recorded in the Official Records of Clark County, Nevada (the "*Official Records*") on _____ _____ as Document No. _____ (the "*Deed of Trust*"), together with the obligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all documents associated therewith (collectively with the Deed of Trust, the "*Assigned Loan Documents*").
                      *****RECORDED CONCURRENTLY HEREWITH

        (B) Income Fund hereby assigns to Maple all of its right, title and interest as beneficiary under the Deed of Trust, together with the obligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all Assigned Loan Documents.

        (C) Maple hereby assigns to Maple 2 all of its right, title and interest as beneficiary under the Deed of Trust, together with the obligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all Assigned Loan Documents.

2.    As a condition to this Assignment, each respective assignee Party, for the duration of its ownership, accepted the assignment described in Section 1 above, and has assumed the terms,

1

10804 (1)_Assignment SAFC – MA2 – DOT @LL20190319)

covenants, obligations, and conditions required to be kept, performed, and fulfilled by the respective assigning Party, the Assigned Loan Documents and the Loan. It being understood that Maple 2, as the final assignee hereunder, accepts and assumes of all said terms, covenants, obligations and conditions.

3.  This Assignment shall be binding upon and inure to the benefit of each Party and their respective successors and assigns.

4.  THIS ASSIGNMENT IS MADE WITHOUT RECOURSE OR WARRANTY OF ANY KIND BY EACH ASSIGNOR, AND EACH ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER WITH RESPECT TO THE DEED OF TRUST OR ANY OTHER ASSIGNED LOAN DOCUMENT (INCLUDING ANY RELATED PROMISSORY NOTE).

5.  This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada.

IN WITNESS WHEREOF, these presents are executed as of the date first set forth above.

**FUNDING CORP:**
5 ARCH FUNDING CORP.

By: _____
Egan Park, Authorized Signor

**INCOME FUND:**
5 ARCH INCOME FUND 2, LLC

By: _____
Egan Park, Authorized Signor

**MAPLE:**
5AIF MAPLE, LLC

By: _____
Egan Park, Authorized Signor

**MAPLE 2:**
5AIF MAPLE 2, LLC

By: _____
Egan Park, Authorized Signor

2

10804 (1)_Assignment 5AFC – MA2 – DOT (I120190319)

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California)
County of Orange)

On March 19, 2019 before me, Adriana Madalina Popa, Notary Public personally appeared Egan Park, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)



10804 (1)_Assignment SAFC – MA2 – DOT (JLL20190319)

# Exhibit 5

Inst #: 20190404-0004010
Fees: $40.00
04/04/2019 03:20:36 PM
Receipt #: 3675684
Requestor:
5 ARCH FUNDING CORP
Recorded By: CDE   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

5AIF JUNIPER 2, LLC
19800 MacArthur Blvd., Suite 1150
Irvine, CA 92612

APN: 139-32-210-007                    [Space above line for R

## ASSIGNMENT OF
## BENEFICIAL INTEREST UNDER DEED OF TRUST

This Assignment of Beneficial Interest Under Deed of Trust (this *"Assignment"*) is dated as of April 2, 2019 (the *"Effective Date"*), and made by and among 5AIF Maple 2, LLC. (*"Maple 2"*), 5AIF Juniper 2 DEP, LLC (*"Juniper 2 DEP"*), and 5AIF Juniper 2, LLC (*"Juniper 2"*) (collectively, the *"Parties"*).

1. For good and valuable consideration, the receipt of which is hereby acknowledged, each of the Parties hereby make the following assignments in the following order:

      (A) Maple 2 hereby assigns to Juniper 2 DEP all of its right, title and interest as beneficiary under that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated March 19, 2019 executed by James White and Jean White as Trustor, to Premium Title as Trustee, and recorded in the Official Records of Clark County, NV (the *"Official Records"*) on March 27, 2019 as Instrument No. 20190327-0001601 (the *"Deed of Trust"*), together with the obligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all documents associated therewith (collectively with the Deed of Trust, the *"Assigned Loan Documents"*).

As assigned by Assignment of Beneficial Interest Under Deed of Trust dated March 19, 2019 from 5 ARCH FUNDING CORP., 5 ARCH INCOME FUND 2, LLC, 5AIF MAPLE, LLC to 5AIF MAPLE 2, LLC, recorded on March 27, 2019 as Instrument No. 20190327-0001603.

      (B) Juniper 2 DEP hereby assigns to Juniper 2 all of its right, title and interest as beneficiary under the Deed of Trust, together with the osbligation therein described, all monies due and to become due thereunder, and all interest thereon, all rights arising therefrom, and all Assigned Loan Documents.

2. As a condition to this Assignment, each respective assignee Party, for the duration of its ownership, accepted the assignment described in Section 1 above, and has assumed the terms, covenants, obligations, and conditions required to be kept, performed, and fulfilled by the respective assigning Party, the Assigned Loan Documents and the Loan. It being understood

1

that Juniper 2, as the final assignee hereunder, accepts and assumes of all said terms, covenants, obligations and conditions.

3.  This Assignment shall be binding upon and inure to the benefit of each Party and their respective successors and assigns.

4.  THIS ASSIGNMENT IS MADE WITHOUT RECOURSE OR WARRANTY OF ANY KIND BY EACH ASSIGNOR, AND EACH ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER WITH RESPECT TO THE DEED OF TRUST OR ANY OTHER ASSIGNED LOAN DOCUMENT (INCLUDING ANY RELATED PROMISSORY NOTE).

5.  This Assignment shall be governed by and construed in accordance with the laws of the State of Nevada.

IN WITNESS WHEREOF, these presents are executed as of the date first set forth above.

MAPLE 2:
5AIF Maple 2, LLC

By: _____
       Patricia McLoon, Authorized Signor

JUNIPER 2 DEP:
5AIF Juniper 2 DEP, LLC

By: _____
       Patricia McLoon, Authorized Signor

JUNIPER 2:
5AIF Juniper 2, LLC

By: _____
       Patricia McLoon, Authorized Signor

2

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California)
County of Orange)

On April 2, 2019 before me, Kevin I. Prado, Notary Public personally appeared Patricia McLoon, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____ (Seal)

KEVIN L PRADO
Notary Public – California
Orange County
Commission # 2209803
My Comm. Expires Aug 12, 2021

3

# Exhibit 6

RECORDING REQUESTED BY
AND WHEN RECORDED RETURN TO:

5AIF Juniper 2, LLC
19800 MacArthur Boulevard, Suite 1150
Irvine, CA  92612

[Space above line for Recorder's Use Only]

## LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT (*Agreement*) is made May 26, 2020 (the *Effective Date*) by and between James White and Jean White, Husband and Wife as Joint Tenants (*Borrower*), and 5AIF Juniper 2, LLC, a Delaware limited liability company (*Lender*), with reference to the following facts:

### RECITALS

**A.**  In connection with a loan (the *Loan*) made to Borrower, Borrower and/or Guarantor (defined below) executed the following documents together with all other documents executed in connection with the Loan (collectively, the *Loan Documents*):

**1.**  Borrower executed that certain Note dated March 19, 2019 and made to the order of Lender's predecessor-in-interest in the original face amount of $840,000.00 (the *Note*);

**2.**  Borrower, as Trustor, also executed that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated March 19, 2019 and recorded March 27, 2019 in the Official Records of Clark County, Nevada as Instrument Number 20190327-0001601, encumbering the Property located at 316 Lacy Lane, Las Vegas, NV, 89107 (the *Property*);

**B.**  All of the original lender's rights, title and interest in, to and under the Loan and the Loan Documents have been validly assigned to Lender.  Defined terms used herein without definition shall have the meanings given them in the Loan Documents.

**C.**  The current maturity date under the Note is April 1, 2020.

**D.**  Lender has full legal right to exercise any and all rights and remedies under the Loan Documents and to, among other things, declare the entire principal balance outstanding, together with all accrued interest and unpaid interest and other amounts payable hereunder and under the Loan Documents (the *Outstanding Amount*), to be immediately due and payable and to commence foreclosure proceedings under the [Deed of Trust].

**E.**  As of the Effective Date, the outstanding principal balance owing by Borrower to Lender under the Loan Documents is Six Hundred and Ninety Three Thousand Seven Hundred Ninety Four Dollars and Thirty Three Cents ($693,794.33).

### AGREEMENT

1

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender do hereby agree as follows:

1. <u>Acknowledgement of Amounts Owing</u>. Borrower acknowledges that, as of the Effective Date, the amounts owing to Lender under the Loan Documents (include without limitation) all of the following: (a) $840,000.00 in principal; plus (b) $5,347.99 accrued and unpaid interest at the stated interest rate; and (c) $0.00 of accrued and unpaid interest at the Default Rate; and (d) $1,069.59 of late fees and charges.

2. <u>Incorporation of Recitals</u>. The above Recitals are incorporated herein by this reference as if set forth in full in this Agreement.

3. <u>Extension</u>. Upon Borrower's satisfaction of all conditions precedent set forth under this Agreement below, the Maturity Date, as amended, shall be extended to August 1, 2020.

4. <u>Conditions Precedent</u>. This Agreement shall not be effective unless and until each of the following conditions precedent have been satisfied by Borrower and Guarantor, if applicable: (a) Lender shall have received this Agreement on or before **May 28, 2020** executed by Borrower, and to the extent Guarantor, no later than **May 28, 2020**; and (c) such other requirements as Lender may reasonably require.

5. <u>Representations, Warranties and Covenants of Borrower</u>. As further material inducement to Lender to enter into this Agreement, Borrower represents, warrants to, and covenants with, Lender that as of the Effective Date:

(a) The Recitals in this Agreement are true and correct in all respects. No notice of the Existing Specified Default, or any other default by Borrower, is required under the Loan Documents Notwithstanding anything stated to the contrary, Lender's decision to extend the Loan in accordance with the Agreement does not constitute a waiver of any defaults including the Existing Specified Default.

(b) The Property is currently leased and is not subject to any mechanic's or materialman's liens.

(c) All representations, warranties and covenants of Borrower in the Loan Documents are incorporated herein in full by this reference and are true and correct as of the Effective Date.

(d) Lender, its predecessor(s) in interest, and any servicer engaged by Lender have fully complied with all of their respective obligations under the Loan Documents and are not in default thereunder, nor has any event occurred which, with the passage of time, would constitute a default thereunder. The Loan Documents are valid and enforceable according to their terms. Borrower's obligations owing under the Loan Documents and Guarantor's obligations under the Guaranty are ratified, confirmed, affirmed and reaffirmed. Borrower's obligation to repay the entire principal balance, all accrued interest, unpaid interest and other amounts payable hereunder (the *Outstanding Amount*) are absolute and unconditional, and there exists no right of set off, defense, claim or any other cause of action (collectively referred to as *Claims*) against Lender which could be asserted to reduce or eliminate any or part of the Borrower's Outstanding Amount, or be sought to gain affirmative relief or damages from Lender, irrespective of whether any such Claims arise out of contract, tort, violation of law or regulations, or otherwise.

2

(e)     Neither the execution and delivery of this Agreement and the other documents and agreements contemplated hereby, the consummation of the transactions contemplated, nor the fulfillment of or compliance with the terms and conditions of this Agreement and such other documents and agreements will result in: (i) the breach of any material term or provision of its organizational documents, if applicable, (ii) conflict with or result in the acceleration of any obligation under, any material agreement, indenture or loan or credit agreement or other instrument to which it or its property is subject, or (iii) the violation of any law, rule, regulation, order, judgment or decree to which it or its property is subject, which breach, conflict, acceleration or violation would have a material adverse effect on its ability to perform its obligations under this Agreement.

(f)     There is no action, suit, proceeding or investigation active or, to the best of its actual knowledge, pending or threatened against it which would draw into question the validity of this Agreement or of any action taken or to be taken in connection with its obligations contemplated herein.

6.   Exculpation. Lender shall not be deemed to have assumed any responsibility or liability for the Property. Further, Lender has not caused any harm or damage to the Property. Lender shall not be deemed to be a mortgagee in possession as a result of this Agreement, or any actions taken by Lender or Borrower pursuant hereto.

7.   Waiver, Release of Claims, and Indemnity. As of the Effective Date, Borrower, Guarantor and their respective agents, including but not limited to, its legal representatives, do hereby release and discharge Lender, as well as each of its respective representatives, agents (actual or ostensible), officers, directors, predecessors, successors, assigns, attorneys, subsidiaries, affiliated entities and all persons acting by, through, under or in concert with them, from any and all claims, demands, causes of action, obligations, damages, costs, penalties and liabilities of any nature whatsoever (individually, *Claim*, and collectively, *Claims*), whether or not known or unknown, suspected or unsuspected, which the parties ever had, now have, or may claim to have against any of the released parties, by reason of any act or omission concerning any matter, cause or thing, arising from or related to the Property, this Agreement or the Loan Documents. This waiver shall apply regardless of whether such Claims arose out of contract, tort, and/or violation of law or regulations. Borrower shall not institute any Claim against Lender relating to Lender's requests or demands in administering or enforcing the collection of the Outstanding Amount. Borrower shall indemnify and hold Lender harmless from any and all loss or liabilities to which Lender may become subject arising from or relating to the Property, this Agreement or the Loan Documents. The provisions of this section shall survive the expiration or termination of this Agreement.

The foregoing release extends to all claims whether or not claimed or suspected and constitute a waiver of each and all of the provisions of the California Civil Code, Section 1542, which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Borrower Initials                                     Guarantor Initials

3

10804_LMA_■■■■■_NH_5.26.20

8. <u>Further Assurances</u>. Borrower agrees to do all other acts as Lender may reasonably request or may reasonably become necessary to implement and carry out the purpose of this Agreement and to perfect and protect the liens and security interests created by the Loan Documents.

9. <u>Advice of Counsel; Inducement</u>. The parties hereto acknowledge that they have been advised of the facts bearing on the matter set forth in this Agreement and that each of them has been given time to be advised of their legal rights by an attorney of their choice. Each party acknowledges that they have read this Agreement in its entirety and fully understand its content and effect. Each party acknowledges that this Agreement is being made as a free choice of each of the parties.

10. <u>Ratification of Liens and Security Interest</u>. Borrower hereby acknowledges and agrees that the liens and security interests of the Loan Documents are valid, subsisting and enforceable liens and security interests and are superior to all liens and security interests other than those exceptions approved by Lender in writing, if any.

11. <u>Relationship</u>. The relationship between Lender and Borrower is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with the Borrower.

12. <u>Benefit of Agreement</u>. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto, their respective successors and assigns, except that Borrower may not assign or transfer any of its rights or obligations hereunder without the prior written consent of Lender. No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement.

13. <u>Integration</u>. This Agreement, together with the Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Agreement, Borrower acknowledges that it is relying on no statement, representation, warranty, covenant or agreement of any kind made by the Lender or any of its employees or agents except for the agreements of Lender set forth herein. The Loan Documents and this Agreement represent the final agreement between the parties hereto and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten agreements of the parties. Except as otherwise specified herein, the terms and provisions of the Loan Documents are ratified and confirmed and shall remain in full force and effect, enforceable in accordance with their terms.

14. <u>Miscellaneous</u>. All costs and expenses, including reasonable attorney's fees, incurred by Lender in connection with this Agreement shall be paid in cash by Borrower contemporaneous with its execution of this Agreement. Borrower shall make and execute any and all other documents as may be necessary or required to effectuate the terms and conditions of this Agreement. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

***[Signature Page to Follow]***

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**LENDER:**
5AIF Juniper 2, LLC
a Delaware limited liability company

*Tim Gannaway*
Tim Gannaway (May 27, 2020 14:34 PDT)

By: _____
Name: Timothy J. Gannaway
Title: EVP

**BORROWER:**
James White and Jean White,
Husband and Wife as Joint Tenants

By: _____
Name: James White


By: _____
Name: Jean White

5

# Exhibit 7

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

5AIF Juniper 2, LLC
19800 MacArthur Boulevard, Suite 1150
Irvine, CA 92612

[Space above line for Recorder's Use Only]

## LOAN MODIFICATION AGREEMENT

THIS LOAN MODIFICATION AGREEMENT (*Agreement*) is made July 22, 2020 (the *Effective Date*) by and between James and Jean White, Husband and Wife as Joint Tenants, (*Borrowers*), and 5AIF Juniper 2, LLC, a Delaware limited liability company (*Lender*), with reference to the following facts:

### RECITALS

A.  In connection with a loan (the *Loan*) made to Borrower, Borrower executed the following documents together with all other documents executed in connection with the Loan (collectively, the *Loan Documents*):

       1.    Borrower executed that certain Note dated March 19, 2019 and made to the order of Lender's predecessor-in-interest in the original face amount of $ 840,000.00 (the *Note*);

       2.    Borrower, as Trustor, also executed that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated March 19, 2019 and recorded March 27, 2019 in the Office of the County Recorder of Clark County, Nevada as Instrument Number: 20190327-0001601 encumbering the Property located at 316 Lacy Lane, Las Vegas, NV 89107 (the *Property*);

B.  All of the original lender's rights, title and interest in, to and under the Loan and the Loan Documents have been validly assigned to Lender. Defined terms used herein without definition shall have the meanings given them in the Loan Documents.

C.  Borrower and Lender entered into that certain Loan Modification Agreement dated May 26, 2020 (*First Loan Modification*).

D.  The current Maturity Date under the Note, as extended by that First Loan Modification, is August 1, 2020. Borrower has requested another extension of the Maturity Date in accordance with the terms set forth herein.

E.  As of the Effective Date, the outstanding principal balance owing by Borrower to Lender under the Loan Documents is Six Hundred and Ninety Three Thousand Seven Hundred Ninety Three Dollars and Zero Cents ($693,793.00).

1

10804_LMA.2_____NH_7.15.20

# AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender do hereby agree as follows:

1.  <u>Incorporation of Recitals</u>.  The above Recitals are incorporated herein by this reference as if set forth in full in this Agreement.

2.  <u>Extension</u>. Upon Borrower's satisfaction of all conditions precedent set forth under this Agreement below, the Maturity Date shall be extended to November 1, 2020.

3.  <u>Interest Rate Increase</u>.  Effective as of August 1, 2020 and throughout the remaining term of the Note, the yearly fixed interest rate as set forth in Section 2(A) of the Note shall be increased from 9.25% to 10.00% (the *Interest Rate Increase*).  Commencing with the monthly payment due August 1, 2020, Borrower's monthly payment will be in the amount of U.S. $5,781.62 (which amount is calculated to reflect the Interest Rate Increase).  As set forth in Section 3(B) of the Note, such amount shall be adjusted by Lender in connection with any subsequent advance under the Note.

4.  <u>Conditions Precedent</u>.  This Agreement shall not be effective unless and until each of the following conditions precedent have been satisfied by Borrower: (a) Lender shall have received this Agreement on or before **July 27, 2020** executed by Borrower; (b) proof that any and all insurance including without limitation any and all hazard insurance relating to the Property is current through the Maturity Date as extended herein (any such insurance shall be in form and substance acceptable to Lender in Lender's sole discretion), and (c) such other requirements as Lender may reasonably require.

5.  <u>Representations, Warranties and Covenants of Borrower</u>.  As further material inducement to Lender to enter into this Agreement, Borrower represents, warrants to, and covenants with, Lender that as of the Effective Date:

    (a)     The Recitals in this Agreement are true and correct in all respects.

    (b)     The Property is not subject to any mechanic's or materialman's liens or any other liens or encumbrances, except as set forth on the Tile Policy issued to Lender or as consented to in writing by Lender.  Borrower further represents and warrants that title to the Property is now vested in Borrower subject only to those matters existing at the time of recordation of the Deed of Trust or as consented to in writing by Lender after recordation of the Deed of Trust and current taxes, and that no one other than Borrower has any interest in the Property.

    (c)     All representations, warranties and covenants of Borrower in the Loan Documents are incorporated herein in full by this reference and are true and correct as of the Effective Date.

    (d)     Lender, its predecessor(s) in interest, and any servicer engaged by Lender have fully complied with all of their respective obligations under the Loan Documents and are not in default thereunder, nor has any event occurred which, with the passage of time, would constitute a default thereunder.  The Loan Documents are valid and enforceable according to their terms.  Borrower's

2

obligations owing under the Loan Documents are ratified, confirmed, affirmed and reaffirmed. Borrower's obligation to repay the entire principal balance, all accrued interest, unpaid interest and other amounts payable hereunder (the *Outstanding Amount*) are absolute and unconditional, and there exists no right of set off, defense, claim or any other cause of action (collectively referred to as *Claims*) against Lender which could be asserted to reduce or eliminate any or part of the Borrower's Outstanding Amount, or be sought to gain affirmative relief or damages from Lender, irrespective of whether any such Claims arise out of contract, tort, violation of law or regulations, or otherwise.

(e)     Neither the execution and delivery of this Agreement and the other documents and agreements contemplated hereby, the consummation of the transactions contemplated, nor the fulfillment of or compliance with the terms and conditions of this Agreement and such other documents and agreements will result in: (i) the breach of any material term or provision of its organizational documents, if applicable, (ii) conflict with or result in the acceleration of any obligation under, any material agreement, indenture or loan or credit agreement or other instrument to which it or its property is subject, or (iii) the violation of any law, rule, regulation, order, judgment or decree to which it or its property is subject, which breach, conflict, acceleration or violation would have a material adverse effect on its ability to perform its obligations under this Agreement.

(f)     There is no action, suit, proceeding or investigation active or, to the best of its actual knowledge, pending or threatened against it which would draw into question the validity of this Agreement or of any action taken or to be taken in connection with its obligations contemplated herein.

6.   Exculpation. Lender shall not be deemed to have assumed any responsibility or liability for the Property. Further, Lender has not caused any harm or damage to the Property. Lender shall not be deemed to be a mortgagee in possession as a result of this Agreement, or any actions taken by Lender or Borrower pursuant hereto.

7.   Waiver, Release of Claims, and Indemnity.  As of the Effective Date, Borrower and their respective agents, including but not limited to, its legal representatives, do hereby release and discharge Lender, as well as each of its respective representatives, agents (actual or ostensible), officers, directors, predecessors, successors, assigns, attorneys, subsidiaries, affiliated entities and all persons acting by, through, under or in concert with them, from any and all claims, demands, causes of action, obligations, damages, costs, penalties and liabilities of any nature whatsoever (individually, *Claim*, and collectively, *Claims*), whether or not known or unknown, suspected or unsuspected, which the parties ever had, now have, or may claim to have against any of the released parties, by reason of any act or omission concerning any matter, cause or thing, arising from or related to the Property, this Agreement or the Loan Documents. This waiver shall apply regardless of whether such Claims arose out of contract, tort, and/or violation of law or regulations. Borrower shall not institute any Claim against Lender relating to Lender's requests or demands in administering or enforcing the collection of the Outstanding Amount. Borrower shall indemnify and hold Lender harmless from any and all loss or liabilities to which Lender may become subject arising from or relating to the Property, this Agreement or the Loan Documents. The provisions of this section shall survive the expiration or termination of this Agreement.

The foregoing release extends to all claims whether or not claimed or suspected and constitute a waiver of each and all of the provisions of the California Civil Code, Section 1542, which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT**

3

**TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Borrower Initials                    Borrower Initials

8.  **Further Assurances.** Borrower agrees to do all other acts as Lender may reasonably request or may reasonably become necessary to implement and carry out the purpose of this Agreement and to perfect and protect the liens and security interests created by the Loan Documents.

9.  **Advice of Counsel; Inducement.** The parties hereto acknowledge that they have been advised of the facts bearing on the matter set forth in this Agreement and that each of them has been given time to be advised of their legal rights by an attorney of their choice. Each party acknowledges that they have read this Agreement in its entirety and fully understand its content and effect. Each party acknowledges that this Agreement is being made as a free choice of each of the parties.

10. **Ratification of Liens and Security Interest.** Borrower hereby acknowledges and agrees that the liens and security interests of the Loan Documents are valid, subsisting and enforceable liens and security interests and are superior to all liens and security interests other than those exceptions approved by Lender in writing, if any.

11. **Relationship.** The relationship between Lender and Borrower is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with the Borrower.

12. **Benefit of Agreement.** This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto, their respective successors and assigns, except that Borrower may not assign or transfer any of its rights or obligations hereunder without the prior written consent of Lender. No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement.

13. **Integration.** This Agreement, together with the Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Agreement, Borrower acknowledges that it is relying on no statement, representation, warranty, covenant or agreement of any kind made by the Lender or any of its employees or agents except for the agreements of Lender set forth herein. The Loan Documents and this Agreement represent the final agreement between the parties hereto and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten agreements of the parties. Except as otherwise specified herein, the terms and provisions of the Loan Documents are ratified and confirmed and shall remain in full force and effect, enforceable in accordance with their terms.

14. <u>Miscellaneous</u>.  All costs and expenses, including reasonable attorney's fees, incurred by Lender in connection with this Agreement shall be paid in cash by Borrower contemporaneous with its execution of this Agreement.  Borrower shall make and execute any and all other documents as may be necessary or required to effectuate the terms and conditions of this Agreement. This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

*[Signature Page to Follow]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**LENDER:**
C5AIF Juniper 2 LLC,  a Delaware
limited liability company

By: *Tim Gannaway*
    Tim Gannaway (Jul 23, 2020 11:33 PDT)

Name: Timothy J. Gannaway

Title: EVP

**BORROWER:**
James and Jean White,  a Husband
and Wife as Joint Tenants

By: _____

Name: James White

By: _____

Name: Jean White

Signed, sealed and delivered in the
presence of:

_____

Witness

5

10804_LMA.2_▮▮▮▮▮NH_7.15.20

## LOAN EXTENSION FEE AGREEMENT

This LOAN EXTENSION FEE AGREEMENT (the *Fee Agreement*) is entered into as of July 15, 2020 by and between James and Jean White, Husband and Wife, as joint Tenants. (the *Borrower*), and 5AIF Juniper 2, LLC, a Delaware limited liability company (*Lender*).

This Fee Agreement is made part of and subject to that certain Loan Modification Agreement of even date herewith (the *Modification Agreement*). Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Modification Agreement.

Borrower agrees to pay Lender an Extension Fee equal to Eight Thousand Four Hundred Thirty Dollars and Zero Cents ($8,430.00) which represents the sum of (x) one percent (1%) of the Note amount, and (y) a reimbursement of costs in an amount equal to Thirty Dollars and Zero Cents due and payable upon payoff of the loan in full.

    In WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**LENDER:**
5AIF JUNIPER 2, LLC
a Delaware limited liability company

By: *Tim Gannaway*
    Tim Gannaway (Jul 23, 2020 11:33 PDT)

Name: Timothy J. Gannaway

Title: EVP

**BORROWER:**
James and Jean White,
Husband and Wife as Joint Tenants

By: _____
Name: James White

By: _____
Name: Jean White

# Exhibit 8

Inst #: 20210715-0002079
Fees: $292.00
07/15/2021 12:57:09 PM
Receipt #: 4615285
Requestor:
WFG National Title Insura
Recorded By: RNS  Pgs: 10
**Debbie Conway**
**CLARK COUNTY RECORDER**
Src: ERECORD
Ofc: ERECORD

**WFG National-Default Services**
*Recording Requested by:*
*same as below*

WHEN RECORDED MAIL TO:
Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705

APN: 139-32-210-007
TS No.: 21-5223
1888719NVD

The undersigned hereby affirms that there is no Social Security number contained in this document.

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE SELL OF REAL PROPERTY UNDER DEED OF TRUST

NOTICE IS HEREBY GIVEN THAT: PRESTIGE DEFAULT SERVICES, LLC is the duly appointed Trustee under a Deed of Trust dated 3/19/2019, executed by JAMES WHITE AND JEAN WHITE, HUSBAND AND WIFE AS JOINT TENANTS, as trustor in favor of PINNACLE LENDING GROUP, INC., A NEVADA CORPORATION, ITS SUCCESSORS AND ASSIGNS, recorded 3/27/2019, under instrument no. 20190327-0001601, of Official Records in the office of the County recorder of Clark, County, Nevada securing, among other obligations.

One Note for the Original sum of $840,000.00, that the beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by the undersigned; that a breach of and default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:

**The failure to pay the unpaid principal balance which became all due and payable on 4/1/2020, that installment of interest that became due, and all subsequent installments of principal and interest and escrow amounts through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premium, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect the preserve its security, all of which must be paid as a condition of payoff including all sums that shall accrue through payoff.**

That by reason thereof the present Beneficiary under such deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

### NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor or Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

T.S. No.: 21-5223               Loan No.: *****3514

You may have a right to participate in the State of Nevada Foreclosure Mediation Program under NRS 107.086 if the time to request mediation has not expired.

Property Address:         **316 Lacy Lane, Las Vegas, NV 89107**

                       LOT ELEVEN (11) IN BLOCK TWO (2) OF EL RANCHO ALTA, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 18, OF PLATS, PAGE 15 ,IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact:**

5AIF Juniper 2, LLC
C/O Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705
Phone: 949-427-2010

To reach a Loss Mitigation Representative who is authorized to negotiate a loan modification, please contact:
5AIF Juniper 2, LLC
Phone: (949) 387-2422

T.S. No.: 21-5223          Loan No.: *****3514

You may wish to consult a credit-counseling agency to assist you.  The following are two local counseling agencies approved by the Department of Housing and Urban Development (HUD): Nevada Legal Services, Inc., 877-693-2163, http://www.nlslaw.net; and Southern Nevada Regional Housing Authority, 702-922-6900, http://www.snvrha.org.  HUD can provide you with the names and addresses of additional local counseling agencies if you call HUD's toll-free telephone number: 800-569-4287.  Additional information may also be found on HUD's website: http://portal.hud.gov/portal/page/portal/HUD/localoffices.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**PRESTIGE DEFAULT SERVICES, LLC MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dated: 7-14-21

PRESTIGE DEFAULT SERVICES, LLC

By: _____
Briana Young, Trustee Sale Officer

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }ss
County of Orange}

On 7/14/2021 before me, Ariel Del Pinto Notary Public, personally appeared **Briana Young** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certified under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> ARIEL DEL PINTO
> Notary Public - California
> Orange County
> Commission # 2272698
> My Comm. Expires Dec 23, 2022

## DECLARATION OF MORTGAGE SERVICER
### (NRS 107.510 (6) )

- **Borrower:** **JAMES WHITE and JEAN WHITE**
- **Property:** **316 Lacy Lane, Las Vegas, NV 89107**
- **Loan No:** *******3514**
- **TS No:** **21-5223**

**The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:**

1. **[  ]  The mortgage servicer has contacted the borrower to assess the borrower's financial situation, provided the toll free number to enable the borrower to find a housing counselor certified by HUD, and explore options for the borrower to avoid foreclosure as required by NRS 107.510(2).  Thirty (30) days, or more, have passed since the initial contact was made.**

2. **[  ]  The mortgage servicer has exercised due diligence to contact the borrower as required by NSR 107.510(5), but has not made contact despite such due diligence. Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.**

3. **No contact was required because:**

   a. **[  ]  The mortgage servicer is exempt from the Nevada pre-foreclosure due diligence requirements set for in or pursuant to NRS 107.460**

   b. **[  ]  The requirements do not apply as the individual(s) identified above do/does not meet the definition of a "borrower" set for in NRS 107.410**

   c. **[ X ]  The requirements NRS 107.450  do not apply as the loan underlying the security interest that is the subject of this foreclosure is not a "residential mortgage loan" (as defined by 107.450), OR, if the loan is a "residential mortgage loan", it is NOT the most senior "residential mortgage loan" encumbering the above-referenced property.**

   d. **[     ]  The requirements of 107.510 do not apply as the default event in which precipitated this foreclosure was not the failure to make a payment required by a residential mortgage loan.**

4. **In light of the foregoing, the mortgage servicer authorizes the trustee to submit the attached Notice of Default and Demand to Sell to be recorded.**

I certify that this declaration is accurate, completed and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclosure, including the borrower's loan status and loan information.

I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Dated: _July 7, 2021_

5AIF Juniper 2, LLC

By: _____

Print Name: _GENE CLARK_

Its: _CHIEF LEGAL OFFICER_

# AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE

| Record Title Holder:<br>JAMES WHITE and JEAN WHITE<br>Or<br>Borrower(s):<br>JAMES WHITE and JEAN WHITE | Trustee Address:<br>1920 Old Tustin Ave.<br>Santa Ana, California 92705 |
|---|---|
| Property Address:<br>316 Lacy Lane, Las Vegas, NV 89107 | Deed of Trust Document Instrument Number<br>20190327-0001601 |
| TS #: 21-5223 | APN: 139-32-210-007 |

STATE OF ___CALIFORNIA___ )
                                    ) ss:
COUNTY OF) ___ORANGE___ )

The affiant, ___Gene Clark___, based on personal knowledge, and following a review of public records in the State of Nevada and a review of business records kept in the ordinary course of business, and under penalty of perjury attests as follows:

    (1) I am an authorized representative of SAIF Juniper 2, LLC. I am duly authorized to make this Affidavit for _SAIF Juniper 2, LLC_ in its capacity as the current beneficiary of the subject deed of trust, described in the Notice of Default to which this Affidavit is attached.

    (2) I have personal knowledge required to execute this Affidavit as set forth in NRS 107.080(2)(c) and can confirm the accuracy of the information set forth herein. If sworn as a witness, I could competently testify to the facts contained herein.

    (3) I have personal knowledge of SAIF Juniper 2, LLC's policies and procedures for creating and maintaining business records. The records are made at or near the time of the occurrence of the event set forth therein, by a person with knowledge of the information contained in the record, or from information transmitted from a person with knowledge of the information described in the record. The records are kept in the ordinary course of SAIF Juniper 2, LLC's business activities, and it is the regular practice of SAIF Juniper 2, LLC to make and rely upon such records.

I have continuing access to the Business Records for the Subject Loan, and I am familiar with the Business Records, and I have personally reviewed the business records relied upon to compile this Affidavit. The information in this Affidavit is based solely upon my review of those Business Records, and official public records in the State of Nevada.

| PRESTIGE DEFAULT SERVICES, LLC | 1920 Old Tustin Ave.<br>Santa Ana, California 92705 |
|---|---|
| Full Name | Street, City, State, Zip |

1. The full name and business address of the current holder of the note secured by the Deed of Trust is:

| SAIF Juniper 2, LLC | 19800 MacArthur Blvd., Suite 490, IRVINE, CA 92612 |
|---|---|

TS # 21-5223

| | |
|---|---|
| Full Name | Street, City, State, Zip |

2. The full name and business address of the current beneficiary of record of the Deed of Trust is:

| | |
|---|---|
| SAIF Juniper 2, LLC | 19800 MacArthur Blvd., Suite 490, IRVINE, CA 92612 |
| Full Name | Street, City, State, Zip |

3. The full name of the business address of the current servicer of the obligation or debt secured by the Deed of Trust is:

| | |
|---|---|
| FCI Lender Services, Inc. | 8180 E. Kaiser Blvd., Anaheim, CA 92808 |
| Full Name | Street, City, State, Zip |

4. The beneficiary, its successor in interest, or the trustee of the Deed of Trust has: (I) actual or constructive possession of the note secured by the Deed of Trust; and/or (II) is entitled to enforce the obligation or debt secured by the Deed of Trust. If the latter is applicable and the obligation or debt is an "instrument," as defined in NRS § 104.3103(2), the beneficiary, its successor in interest, or the trustee entitled to enforce the obligation or debt is either: (1) the holder of the instrument constituting the obligation or debt (2) a non-holder in possession of the instrument who has the rights of the holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to a court order issued under NRS § 104.3309.

5. The beneficiary, its successor in interest, the trustee, the servicer of the obligation or debt secured by the Deed of Trust, or an attorney representing any of those persons, has sent to the obligor or borrower of the obligation or debt secured by the Deed of Trust a written statement containing the following information: (I) the amount of payment required to make good the deficiency in performance or payment, avoid the exercise of the power of sale and reinstate the underlying obligation or debt, as of the date of the statement; (II) The amount in default; (III) the principal amount of the obligation or the debt secured by the Deed of Trust; (IV) the amount of accrued interest and late charges; (V) a good faith estimate of all fees imposed in connection with the exercise of the power of sale; and (VI) contact information for obtaining the most current amounts due and a local or toll free telephone number where the obligor or borrower of the obligation or debt may call to receive the most current amounts due and the recitation of the information contained in this Affidavit.

6. The borrower or obligor may utilize the following toll-free or local telephone number to inquire about the default, obtain the most current amounts due, receive a recitation of the information contained in this Affidavit, and/or explore loss mitigation alternatives: (949) 387-2422

7. Pursuant to my personal review of the business records of the beneficiary, the successor in interest of the beneficiary, and/or the business records of the servicer of the obligation or debt

TS # 21-5223

secured by the Deed of Trust; and/or the records of the county recorder where the subject real property is located; and/or the title guaranty or title insurance issued by a title insurer or title agent authorized to do business in the state of Nevada, the following is the (I) date, (II) recordation number (or other unique designation); and (III) assignee of each recorded assignment of the subject Deed of Trust:

| Recorded Date or Dated Date | Recording Number | Name of Assignee (From/To) |
|---|---|---|
| 3/27/2019 | 20190327-0001602 | FROM: PINNACLE LENDING GROUP, INC TO: 5 ARCH FUNDING CORP., A CALIFORNIA ASSOCIATION |
| 3/27/2019 | 20190327-0001603 | FROM: 5 ARCH FUNDING CORP. TO: 5 ARCH INCOME FUND 2, LLC<br><br>FROM: 5 ARCH INCOME FUND 2, LLC TO: 5AIF MAPLE, LLC<br><br>FROM: 5AIF MAPLE, LLC TO: 5AIF MAPLE 2, LLC |
| 4/4/2019 | 20190404-0004010 | FROM: 5AIF MAPLE 2, LLC TO: 5AIF JUNIPER 2 DEP, LLC<br><br>FROM: 5AIF JUNIPER 2 DEP, LLC TO: 5AIF JUNIPER 2, LLC |

8. The beneficiary, its successor in interest, or the servicer of the obligation or debt secured by the Deed of Trust has instructed or hereby instructs the trustee to exercise the power of sale with respect to the subject real property.

Dated this __7th__ day of __JULY__, 20__21__.

Signed By: _____

Print Name: __GENE   CLARK__

TS # 21-5223

STATE OF_____)
                                ) ss:
COUNTY OF_____)

On this _____ day of _____, 20____, personally appeared before me, a Notary Public, in and for said County and State, _____, known to me to be the persons described in and who executed the foregoing instrument in the capacity set forth therein, who acknowledged to me that he/she executed the same freely and voluntarily and for the uses and purposes therein mentioned.

_____
NOTARY PUBLIC IN AND FOR
SAID COUNTY AND STATE

TS # 21-5223

**CALIFORNIA ACKNOWLEDGMENT**                                 CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _____ **ORANGE** _____ }

On _____ **JULY 7, 2021** _____ before me, _____ **MELISSA VU, NOTARY PUBLIC** _____
         *Date*                                           *Here Insert Name and Title of the Officer*

personally appeared _____ **GENE CLARK** _____
                                                   *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

MELISSA VU
Commission # 2323824
Notary Public - California
ORANGE County
My Comm. Expires SEP 1, 2024

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Place Notary Seal and/or Stamp Above*      *Signature of Notary Public*

──────────────── **OPTIONAL** ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2019 National Notary Association

# Exhibit 9

APN: 139-32-210-007

Prestige Default Services, LLC
1920 Old Tustin Ave.
Santa Ana, California 92705

Inst #: 20211208-0002329
Fees: $42.00
12/08/2021 02:15:03 PM
Receipt #: 4810449
Requestor:
WFG National Title Insura
Recorded By: DROY   Pgs: 2
Debbie Conway
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

T.S. No.: 21-5223
Loan No.: *****3514

_____

**The undersigned hereby affirms that there is no Social Security number contained in this document.**

## NOTICE OF TRUSTEE'S SALE
## IMPORTANT NOTICE TO PROPERTY OWNER

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/19/2019. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 1/27/2022 at 10:00 AM, **Prestige Default Services, LLC**, as duly appointed Trustee **WILL SELL AT PUBLIC AUCTION OT THE HIGHEST BIDDER FOR CASH** at the Offices of Nevada Legal News, 930 South 4th Street, Las Vegas, all right, title and interest conveyed to and now held by it under and pursuant to Deed of Trust recorded on 3/27/2019 as Instrument No. 20190327-0001601 of the official records in the Office of the Recorder of Clark County, Nevada, executed by **JAMES WHITE** and **JEAN WHITE** husband and wife, as joint tenants, as Trustor, **PINNACLE LENDING GROUP, INC., A NEVADA CORPORATION, ITS SUCCESSORS AND ASSIGNS** as Beneficiary, all that certain property situated in said County and State, and more commonly described as:

**THE PROPERTY LOCATED IN THE COUNTY OF CLARK AND STATE OF NEVADA DESCRIBED AS FOLLOWS: LOT ELEVEN (11) IN BLOCK TWO (2) OF EL RANCHO ALTA, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 18, OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**
**A.P.N.: 139-32-210-007**

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the real property described above is purported to be: **316 Lacy Lane, Las Vegas, NV 89107**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown above. Said sale will be made, but without covenant or warranty expressed or implied, regarding title, possession or encumbrances, to pay the remaining unpaid balance of $693,793.76, the obligations secured by the property to be sold and reasonably estimated costs, expenses and advances as of the first publication date of this Notice of Trustee's Sale. Accrued interest and additional advances, if any, will increase the figure prior to sale. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

Beneficiary's bid at sale may include all or part of said amount. In addition to cash, the Trustee will accept, all payable at time of sale in lawful money of the United States a Cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in the applicable sections of the Nevada Administrative Code and authorized to do business in the State of Nevada, or other such funds acceptable to the Trustee.

The Beneficiary under the Deed of Trust heretofore executed and delivered to the undersigned, a written Declaration of Default and Demand for Sale. The undersigned caused said Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust to be recorded in the County where the real property is located and more than three months have elapsed since such recording.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

**SALE INFORMATION CAN BE OBTAINED ONLINE AT https://mkconsultantsinc.com/trustees-sales/**
**FOR AUTOMATED SALES INFORMATION PLEASE CALL: (877) 440-4460**

Date: 12-7-21

PRESTIGE DEFAULT SERVICES, LLC
Sale Line: (877) 440-4460

Briana Young, Trustee Sale Officer

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California} ss**
**County of Orange}**

On 12/7/21 before me, Ariel Del Pinto Notary Public, personally appeared Briana Young personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____ (Seal)

ARIEL DEL PINTO
Notary Public - California
Orange County
Commission # 2272698
My Comm. Expires Dec 23, 2021

# Exhibit 10

Inst #: 20220209-0000726
Fees: $42.00
RPTT: $3057.45  Ex #:
02/09/2022 09:12:06 AM
Receipt #: 4883095
Requestor:
Resources Group
Recorded By: DOBLC  Pgs: 3
**Debbie Conway**
**CLARK COUNTY RECORDER**
Src: ERECORD
Ofc: ERECORD

RECORDING REQUESTED BY:

AND WHEN RECORDED TO:
RG Insurance Trust
PO BOX 36208
LAS VEGAS, NV 89133

Forward Tax Statements to
the address given above

---

A.P.N.: 139-32-210-007

SPACE ABOVE LINE FOR RECORDER'S USE

T.S. # 21-5223

**The undersigned hereby affirms that there is no Social Security number contained in this document.**

# TRUSTEE'S DEED UPON SALE

Transfer Tax: $3,057.45
The Grantee Herein was not the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was $877,034.20
The Amount Paid by the Grantee was $599,100.00
Said Property is in the City of LAS VEGAS, County of Clark

**PRESTIGE DEFAULT SERVICES, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

# RG Insurance Trust

(herein called Grantee) but without covenant or warranty, expressed or implied, all rights, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of Clark, State of Nevada, described as follows:

**THE PROPERTY LOCATED IN THE COUNTY OF CLARK AND STATE OF NEVADA DESCRIBED AS FOLLOWS: LOT ELEVEN (11) IN BLOCK TWO (2) OF EL RANCHO ALTA, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 18, OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**

**PROPERTY IS ALSO KNOWN AS: 316 LACY LANE, LAS VEGAS, NV 89107**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **JAMES WHITE and JEAN WHITE husband and wife, as joint tenants** as Trustor, dated 3/19/2019 of the Official Records in the office of the Recorder of Clark, Nevada under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 3/27/2019, instrument number 20190327-0001601 of official records. Trustee having complied with all applicable statutory requirements of the State of Nevada and performed all duties required by the Deed of Trust including sending a Notice of Breach and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified return receipt mail, postage pre-paid to each person entitled to notice in compliance with Nevada Civil Code 107.050

# TRUSTEE'S DEED UPON SALE

T.S. #: 21-5223

All requirements per Nevada Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 1/27/2022. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $599,100.00, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, PRESTIGE DEFAULT SERVICES, LLC, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: __2/3/2__

PRESTIGE DEFAULT SERVICES, LLC

MICHELLE K. GHIDOTTI-GONSALVES, PRESIDENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }ss
County of Orange}

On _2/3/22_ before me, _Ariel Del Pinto_ Notary Public, personally appeared ___Michelle Ghidotti-Gonsalves___ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certified under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
ARIEL DEL PINTO

MICHELLE GHIDOTTI-GONSALVES, PRESIDENT

ARIEL DEL PINTO
Notary Public · California
Orange County
Commission # 2272698
My Comm. Expires Dec 23, 2022

ARIEL DEL PINTO
COMMISSION # 2272698
MY COMM. EXPIRES DEC 23, 2022

STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) 139-32-210-007
   b)
   c)
   d)

2. Type of Property:
   a) ☐ Vacant Land      b) ■ Single Fam. Res.
   c) ☐ Condo/Twnhse     d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg        f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural     h) ☐ Mobile Home
      ☐ Other

| FOR RECORDER'S OPTIONAL USE ONLY |
|---|
| Book:_____ Page:_____ |
| Date of Recording:_____ |
| Notes: |

3. Total Value/Sales Price of Property                       $599,100.00
   Deed in Lieu of Foreclosure Only (value of property)    (_____)
   Transfer Tax Value:                                       $599,500.00
   Real Property Transfer Tax Due                            $3,057.45

**4. If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption: _____

5. Partial Interest: Percentage being transferred: 100%
   The undersigned declares and acknowledges, under penalty of perjury, pursuant to
NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and
belief, and can be supported by documentation if called upon to substantiate the information provided herein.
Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional
tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.  Pursuant to NRS 375.030,
the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature _____ MICHELE R GHIDOTTI-GONSALVES _____   Capacity President _____

Signature _____       Capacity _____

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: Prestige Default Services, LLC | Print Name: R G INSURANCE TRUST |
| Address: 1920 Old Tustin Ave. | Address:  900 S LAS VEGAS BLVD #810 |
| City: Santa Ana | City:  LAS VEGAS |
| State: CA     Zip: 92805 | State:  NV          Zip: 89101 |

**COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**

| | |
|---|---|
| Print Name:  Resources Group LLC | Escrow #: _____ |
| Address:  900 S LAS VEGAS BLVD #810 | |
| City:   LAS VEGAS | State:  NV          Zip: 89101 |

**AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**